STATE OF CONNECTICUT *v.* MAURICE S. MALCOLM
(SC 16389)

McDonald, C. J., and Norcott, Katz, Sullivan and Vertefeuille, Js.*

case be remanded to the Appellate Court for that court's review of the merits of the petitioner's claim.

* Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion was officially released, his continued participation on this panel is authorized by General Statutes § 51-198 (c). The listing of justices reflects their seniority status on this court as of the time of oral argument.

654

Argued January 9—officially released August 21, 2001

*Robert M. Spector,* deputy assistant state's attorney, with whom were *James R. Turcotte,* supervisory assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellant (state).

*Michael Boyle,* for the appellee (defendant).

SULLIVAN, J. The issue in this appeal is whether the trial court improperly granted the defendant's motion to withdraw his guilty plea, on the grounds that, in accepting the guilty plea, the trial court had failed to mention specifically all three immigration and naturalization consequences listed in General Statutes § 54-1j[1] that could result from a guilty plea by a defendant who is not a United States citizen. We reverse the ruling of that court.

On or about December 11, 1996, undercover Hamden police officers made arrangements to purchase three ounces of marijuana from someone named "Mo" for $375. A meeting was held at an arranged location, and the defendant, Maurice S. Malcolm, arrived with the marijuana and was arrested. The defendant appeared to be under the influence of marijuana at the time.

The defendant was charged with the sale of a controlled substance in violation of General Statutes § 21a-277 (b),[2] possession of a controlled substance, less than

[1] General Statutes § 54-1j provides: "(a) The court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the court advises him of the following: 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.'

"(b) The defendant shall not be required at the time of the plea to disclose his legal status in the United States to the court.

"(c) If the court fails to advise a defendant as required in subsection (a) of this section and the defendant not later than three years after the acceptance of the plea shows that his plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty."

[2] General Statutes § 21a-277 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as authorized in this chapter, may, for the first offense, be fined not more than

four ounces of marijuana, in violation of General Statutes § 21a-279 (c),[3] and conspiracy to sell a controlled substance in violation of General Statutes §§ 53a-48 and 21a-277.[4] On August 20, 1998, after coming to an agreement with the state, the defendant pleaded guilty to the sale of marijuana in violation of § 21a-277 (b). Although the defendant and the state had agreed on a sentence of five years imprisonment, execution suspended, with a two year period of probation, the trial court sentenced the defendant to three years imprisonment, execution suspended, and two years of probation.[5]

On or around May 10, 1999, the Immigration and Naturalization Service took the defendant into custody and instituted deportation proceedings against him. The defendant was transferred to an Immigration and Naturalization Service detention facility in Oakdale, Louisi-

---

twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

[3] General Statutes § 21a-279 (c) provides: "Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marijuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned."

[4] General Statutes § 53a-48 provides: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[5] The trial court stated, "I think five is too much for this, I think it should be three suspended. This is sale of [less than four ounces of] marijuana."

ana. On May 20, 1999, the defendant filed an emergency motion to vacate the judgment and withdraw his guilty plea on the grounds that the trial court failed to comply with § 54-1j in accepting his guilty plea and that he was likely to be deported within two weeks. The trial court granted the motion on June 4, 1999. The state, on the granting of permission, appealed to the Appellate Court, and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. On appeal, the state claims that the trial court improperly found that the defendant's guilty plea canvass did not comply with § 54-1j and, therefore, improperly vacated the defendant's conviction. We agree with the state.

I

FINAL JUDGMENT

The state argues that the trial court's vacating of the defendant's conviction is an appealable final judgment under *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). We agree.

In *Curcio*, we held that "[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id. The state relies on the second prong of this test, which "focuses not on the proceeding involved, but on the potential harm to the appellant's rights." Id., 33. It points out that, in this case, the defendant pleaded guilty on August 20, 1998, in exchange for a sentence of three years imprisonment, suspended after thirty days served, and two years probation. The defendant had already served the thirty days in lieu of posting bond at the time that the sentence was imposed. In reliance on the defendant's representations at the plea canvass and on the existence of a final, partially

executed judgment against the defendant, the state then destroyed the evidence against him.

We conclude that these circumstances distinguish this case from *State* v. *Ross*, 189 Conn. 42, 454 A.2d 266 (1983). In that case we held that a judgment of dismissal of the charges, with prejudice, entered on the state's own motion, was "a sufficiently serious precondition to the right of appeal to provide adequate assurance that this procedure will not be resorted to lightly"; id., 50–51; and allowed the appeal. In the present case, although the state has not dismissed the charges against the defendant as a precondition to the appeal, in reasonable reliance on the defendant's representations that he had discussed the immigration consequences of his plea with his lawyers, it has destroyed the evidence against him, thereby significantly impairing its ability to retry him. "A presentence order will be deemed final for purposes of appeal only if it involves a claimed right the legal and practical value of which would be destroyed if it were not vindicated before trial." Internal quotation marks omitted.) *State* v. *Curcio*, supra, 191 Conn. 33–34. Because the practical value of the state's right to seek a judgment against the defendant will be destroyed if it is not allowed to appeal, we conclude that the trial court's ruling vacating the conviction and allowing the defendant to withdraw the guilty plea was an appealable final judgment under the second prong of *Curcio*.

## II

## COMPLIANCE WITH GENERAL STATUTES § 54-1j

The defendant claims that the trial court did not comply with § 54-1j[6] before accepting his plea. At the plea

---

[6] Several of our sister states have statutes similar to § 54-1j. See Cal. Penal Code § 1016.5 (Deering 1998); D.C. Code Ann. § 16-713 (1997); Haw. Rev. Stat. c. 802E (1993); Mass. Gen. Laws c. 278, § 29D (Lawyers Coop. 1992); Mont. Code Ann. § 46-12-210 (1999); N.Y. Crim. Proc. Law § 220.50 (McKinney 1993); Ohio Rev. Code Ann. § 2943.031 (Baldwin 1997); Or. Rev. Stat. § 135.385 (1990); R.I. Gen. Laws § 12-12-22 (2000); Tex. Crim. Code Ann.

canvass, the trial court questioned the defendant as follows: "The law says that I have to tell you that if you're not a citizen of the United States, conviction of this offense can result in your being deported, being denied admission to the United States or being denied readmission to the United States, have you discussed that with your lawyers too?" The defendant responded, "Yes." The court then asked, "Is there anything you want to ask your lawyer right now? Take a minute if you do," and the defendant responded, "No." The defendant points out that § 54-1j provides that the defendant shall be warned about each of three potential consequences of a guilty plea: (1) deportation; (2) denial of admission to the United States; and (3) denial of naturalization. The defendant argues that the trial court's instruction, which warned of only deportation and denial of admission, was improper. The state contends that the trial court's advisement substantially complied with § 54-1j and was, therefore, proper. We agree with the state.

This court previously has not considered whether a trial court must strictly comply with § 54-1j. Other jurisdictions, however, have addressed the issue. In *Daramy* v. *United States*, 750 A.2d 552, 554 (D.C. 2000),[7]

---

§ 26.13 (West 1989); Wash. Rev. Code Ann. § 10.40.200 (West 1990); Wis. Stat. Ann. § 971.08 (West 1998).

[7] D.C. Code Ann. § 16-713 (1997) provides in relevant part: "Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime, the court shall administer the following advisement on the record to the defendant: 'If you are not a citizen of the United States, you are advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.'

"(b) . . . If the court fails to advise the defendant as [so] required . . . and the defendant shows that conviction of the offense to which the defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to with-

the trial court instructed the defendant, who was not a citizen, that the " 'Immigration and Naturalization Service could review your status to decide whether to allow you to remain in the United States or to return to your home country. If you were required to depart, put it plainly, if you were deported, you could be barred from re-entry at some future date.' " As in the present case, the trial court in *Daramy* did not mention the denial of naturalization. The District of Columbia Court of Appeals looked to the legislative history of the District of Columbia statute and found the statute to be a legislative response to the apparent "reluctance of the courts to grant a motion to withdraw a guilty plea when the defendant had not been advised of potential consequences with respect to the prisoner's immigration status." Id., 555–56. The court found that the purpose of the statute was to put noncitizens on notice that a plea of guilty could result in immigration consequences. Id., 556. It concluded that, even though the trial court did not warn the defendant that he could be denied naturalization, he could have inferred such a consequence because he could not have been deported if he were naturalized. Id., 556–57. The court held that, while it would have been better for the trial court to have read the statute verbatim, the warning as given was acceptable. Id.; see also *People* v. *Superior Court*, 23 Cal. 4th 183, 194, 199, 999 P.2d 686, 96 Cal. Rptr. 2d 463 (2000)[8]

---

draw the plea of guilty or nolo contendere, and enter a plea of not guilty. . . ."

[8] Cal. Penal Code § 1016.5 (Deering 1998) provides in relevant part: "(a) Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant:

"If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. . . .

"(b) If . . . the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences

(where trial court did not specifically mention one potential consequence listed in statute, namely that defendant could be excluded from admission to United States, court held that, under state constitution, to vacate plea, defendant must show he was prejudiced by trial court's noncompliance with statute); *Delatorre v. State*, 957 S.W.2d 145, 150–51 (Tex. App. 1997) (trial court's instruction substantially complied with statute "because it included the most severe action which could have befallen the defendant," namely deportation); *Garcia v. State*, 877 S.W.2d 809, 813 (Tex. App. 1994) ("trial court's admonishment, 'if you're not a citizen or if you're not legally in this country, that it could mean that you would have to be sent back to your original country,' substantially complied" with Texas statute); *State v. Garcia*, 234 Wis. 2d 304, 310–11, 312, 610 N.W.2d 180 (App. 2000) (warning sufficient, despite the fact that it did not follow statute[9] verbatim, because defendant confirmed that he understood risk of deportation, was instructed that his status would be uncertain and deportation prime consideration in plea negotiation). We agree with the reasoning of these cases and conclude

for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. . . ."

[9] Wis. Stat. Ann. § 971.08 (1) (West 1998) provides in relevant part: "Before the court accepts a plea of guilty or no contest, it shall . . .

"(c) Address the defendant personally and advise the defendant as follows: 'If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law.' . . ." Section 971.08 (2) provides in relevant part that if the court fails so to advise a defendant "and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. . . ."

that it was not necessary for the trial court to read the statute verbatim. We conclude, rather, that only substantial compliance with the statute is required to validate a defendant's guilty plea.

Moreover, this court repeatedly has held that only substantial compliance is required when warning the defendant of the direct consequences of a guilty plea pursuant to Practice Book § 39-19[10] in order to ensure that the plea is voluntary pursuant to Practice Book § 39-20.[11] See *State* v. *Ocasio*, 253 Conn. 375, 380, 751 A.2d 825 (2000) ("only substantial, rather than literal, compliance with § 39-20 is required in order to validate a defendant's plea of guilty"); *State* v. *Godek*, 182 Conn. 353, 360, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981) ("constitutional rights of a criminal defendant in taking either a guilty or a nolo plea must be scrupulously protected

---

[10] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

[11] Practice Book § 39-20 provides: "The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

. . . [however] the failure to comply with each and every requirement of [the statute] does not automatically require the vacating of the defendant's plea" [citations omitted]). We will not require stricter compliance with regard to the collateral consequences of a guilty plea.[12]

Furthermore, such a standard is consistent with the legislative intent behind § 54-1j. Although there is little legislative history regarding § 54-1j, comments made by Senator Howard T. Owens, Jr., to the Senate on April 14, 1982, shed some light on the legislative intent behind the statute. After summarizing the text of the statute, Senator Owens indicated that "if the court fails to advise the defendant of the possible consequences of the conviction, [and] the defendant shows that his plea and conviction could result in deportation . . . [t]he court could, at a subsequent date, be required to vacate the judgment and permit the defendant to withdraw his plea and enter a plea of not guilty." 25 S. Proc., Pt. 4, 1982 Sess., pp. 1263. Senator Owens added, "[a lot] of people are not aware of the consequences of these [Immigration and Naturalization Service rules] and face deportation and being able to do nothing about it." Id. These remarks suggest that § 54-1j, rather than demanding that trial courts instruct defendants on the intricacies of immigration law, seeks only to put defen-

---

[12] Although we do not mean to minimize the potential impact of the immigration and naturalization consequences of a plea, they are not of constitutional magnitude: "The statutory mandate . . . cannot transform this collateral consequence into a direct consequence of the plea. It can only recognize that this collateral consequence is of such importance that the defendant should be informed of its possibility." *State* v. *Baeza*, 174 Wis. 2d 118, 125, 496 N.W.2d 233 (App. 1993); *United States* v. *Santelises*, 476 F.2d 787, 790 (2d Cir. 1973) ("[d]eportation . . . serious sanction though it may be, is not such an absolute consequence of conviction that we are mandated to read into traditional notions of due process a requirement that a district judge must warn each defendant of the possibility of deportation before accepting his plea"); see also *State* v. *Andrews*, 253 Conn. 497, 504, 507–508 n.8, 752 A.2d 49 (2000).

dants on notice that their resident status could be implicated by the plea. Id.; see also *Commonwealth* v. *Hason*, 27 Mass. App. 840, 844–45, 545 N.E.2d 52 (1989).

By instructing the defendant that he could be deported or excluded from readmission to the United States, the trial court in the present case substantially complied with § 54-1j. The defendant was warned adequately that his immigration status could be implicated by his guilty plea.

Although it would have been better practice for the trial court to have read the statute verbatim, strict compliance was not necessary to put the defendant on notice that a conviction could have implications beyond the state criminal justice system. To allow the defendant now, years after the charges were brought, and after the evidence has been destroyed, to withdraw a plea into which he entered knowingly and voluntarily would be to assert form over substance.[13] See *Commonwealth* v. *Lopez*, 426 Mass. 657, 662, 690 N.E.2d 809 (1998) ("strict standard for postconviction motions promotes judicial efficiency and finality by discouraging a defendant from entering a guilty plea to test the weight of potential punishment" [internal quotation marks omitted]); see also *Commonwealth* v. *Hason*, supra, 27 Mass. App. 845 (judges "should only grant a postsentence motion to withdraw a plea if the defendant comes forward with a credible reason which outweighs the risk of prejudice to the Commonwealth" [internal quotation

---

[13] The defendant ultimately received a sentence even more lenient than that for which he had bargained. Although he had agreed to a five year suspended sentence, the trial court, sua sponte, reduced the sentence to a three year suspended sentence, an action the trial court later lamented when the defendant moved to withdraw his plea "after the great deal we gave him, which I resent heartily . . . ." Upon granting the defendant's motion to withdraw his guilty plea, the trial court noted: "[I]t just puts the state in a terrible position. It's totally unfair to them because we did destroy the evidence based on him saying he understood everything and talked to his lawyer about it."

marks omitted]). The legislature did not intend to create a loophole for defendants to use as grounds for vacating guilty pleas, years after they have been entered, once evidence is destroyed or witnesses become unavailable. See *State* v. *Evans*, 290 Or. 707, 714, 625 P.2d 1300 (1981) ("what the defendant now seeks is to have the benefit of his plea bargain now that the other charges against him have been dismissed and to nevertheless challenge the validity of his conviction based upon a contention which was not brought to the attention of the trial court" [internal quotation marks omitted]); *State* v. *Chavez*, 175 Wis. 2d 366, 371, 498 N.W.2d 887 (App. 1993) ("[c]onsistent with this legislative history, we conclude that the legislature did not intend a windfall to a defendant who was aware of the deportation consequences of his plea").

We also note that the defendant is now threatened with deportation, a subject on which he was instructed, not denial of naturalization. He argues that, had he been able to be naturalized, he could have avoided deportation. This argument, however, simply underscores the interrelated nature of the three potential immigration consequences. Although deportation, exclusion and denial of naturalization are distinct from each other, they are sufficiently related, such that a warning about the first two puts a defendant on notice that the third could be implicated. See *Daramy* v. *United States*, supra, 750 A.2d 557 (where trial court omitted any specific reference to naturalization, court reasoned: "Only by denying the conferral of United States nationality upon Daramy through naturalization would the [Immigration and Naturalization Service] be in a position to return [the defendant] to [her native country]. As only aliens can be made to leave the United States, the plain import of the trial court's statement is that the [Immigration and Naturalization Service] could choose not to naturalize [the defendant]. . . . There-

fore, while the trial court did not quote the statute verbatim," it did place the defendant on notice that she might be denied naturalization.). Because we are not persuaded that a verbatim reading of § 54-1j is required, we reverse the trial court's granting of the defendant's motion to vacate his guilty plea.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion to vacate the judgment and withdraw his plea.

In this opinion, MCDONALD, C. J., and NORCOTT and VERTEFEUILLE, Js., concurred.

KATZ, J., dissenting. It is well settled that "[t]his court's jurisdiction is limited by statute to appeals from final judgments; General Statutes §§ 51-197a, 52-263;[1] and [that] accordingly we have no discretion to enlarge our jurisdiction in abrogation of the final judgment rule." *State* v. *Southard,* 191 Conn. 506, 508, 467 A.2d 920 (1983). This final judgment rule "serves the important public policy of discouraging the delays and inefficiencies attending piecemeal appeals. . . . That policy applies with particular force in criminal cases because, as both this court and the Supreme Court of the United States have recognized, undue litigiousness and leaden-

[1] General Statutes § 51-197a (a) provides: "Appeals from final judgments or actions of the Superior Court shall be taken to the Appellate Court in accordance with section 51-197c, except for small claims, which are not appealable, appeals within the jurisdiction of the Supreme Court as provided for in section 51-199, appeals as provided for in sections 8-8 and 8-9, and except as otherwise provided by statute."

General Statutes § 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

footed administration of justice [are] particularly damaging to the conduct of criminal cases." (Citations omitted; internal quotation marks omitted.) Id., 509.

The appealable final judgment in a criminal case is ordinarily the imposition of sentence. *State* v. *Grotton*, 180 Conn. 290, 293, 429 A.2d 871 (1980). General Statutes § 54-96[2] permits the state to appeal from rulings and decisions of the Superior Court upon questions of law arising in criminal trials, provided that the appeal is from a final judgment. We previously have recognized, however, in both criminal and civil cases, that certain otherwise interlocutory orders may constitute final judgments for purposes of appeal. "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). "Unless the appeal is authorized under the *Curcio* criteria, absence of a final judgment is a jurisdictional defect that results in a dismissal of the appeal." *State* v. *Paolella*, 210 Conn. 110, 119, 554 A.2d 702 (1989).

"The first alternative, termination of a separate and distinct proceeding, requires the order being appealed to be severable from the central cause to which it is related so that the main action can 'proceed independent of the ancillary proceeding.'" *In re Juvenile Appeal (85-AB)*, 195 Conn. 303, 307, 488 A.2d 778 (1985). The state makes no claim in this case that the trial court order granting the defendant's motion to withdraw his guilty plea terminated a separate and dis-

---

[2] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

tinct proceeding. Rather, the state seeks to fit this case within the second prong of the *Curcio* test, arguing that, if the defendant's trial is permitted to proceed, the state will lose forever its right to challenge the trial court's vacating of the defendant's guilty plea. The state reasons that, if the defendant is convicted following a trial, the state's claim that the trial court improperly allowed the defendant to withdraw his plea will be moot, while if he is acquitted, any appeal by the state would be fruitless because the double jeopardy clause would prohibit the reinstatement of the judgment of conviction.

At the outset, I agree with the state's analysis of the double jeopardy issue. The decisions of the Supreme Court of the United States have reiterated often the principle that a "judgment of acquittal, however erroneous, bars further prosecution on any aspect of the count and hence bars appellate review of the trial court's error." *Sanabria* v. *United States*, 437 U.S. 54, 69, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978) (involving erroneous exclusion of evidence). Additionally, I recognize that, at first blush, the circumstances of this appeal appear to fit literally within the language of the second prong of the *Curcio* test, as the state contends. The issue as I see it, however, is whether the state may rely on the threat of double jeopardy to avoid the final judgment rule, without terminating the prosecution in order to appeal the trial court order. I would conclude that it cannot. "The intent of that constitutional prohibition is to shield criminal defendants from repeated prosecution; for that reason, the prohibition cannot in and of itself be utilized by the state as a sword to obtain review of interlocutory orders that would be unavailable to the defendant." *State* v. *Southard*, supra, 191 Conn. 511–12.

In *State* v. *Ross*, 189 Conn. 42, 49–51, 454 A.2d 266 (1983), the state appealed from an allegedly improper suppression of crucial evidence. That appeal was predicated upon a judgment of dismissal of the charges, with

prejudice, entered on the state's own motion. Id., 45. Because the state's appeal in *Ross* was thus conditioned on its willingness to stake the outcome of the prosecution on reversing the trial court's order suppressing evidence, this court held that "[a] decision by the state to obtain dismissal of a prosecution with prejudice is a sufficiently serious precondition to the right of appeal to provide adequate assurance that this procedure will not be resorted to lightly." Id., 50–51.

In *State* v. *Southard*, supra, 191 Conn. 512, this court dismissed the state's appeal of the trial court's order denying its demand for a jury trial because "the state ha[d] not satisfied the precondition set down by *Ross*." The court concluded that, in the absence of any precedent supporting the state's position that the denial of its claim for a jury trial could have been reviewed by a pretrial appeal without putting into jeopardy the possibility of securing a conviction at a court trial, the state was not entitled to review of its claim. Although the court in *Ross* recognized the seriousness of the state's interest in the resolution of the jury trial issue, it emphasized that the final judgment rule, and consequently, this court's jurisdiction, "has never turned upon the gravity of the claims that are denied interlocutory review." Id., 512.[3]

The state acknowledges that, because the drugs involved in this case have been destroyed, its ability to successfully prosecute the defendant at trial has been

---

[3] Not only is the gravity of the claim not controlling, but the obvious gain in judicial efficiency that could be realized whenever a full trial can be avoided also is not determinative; see *State* v. *Spendolini*, 189 Conn. 92, 97, 454 A.2d 720 (1983) (denial of accelerated rehabilitation not final judgment for appeal purposes; right can be vindicated after trial); nor does the level of sacrifice that the party seeking review must make influence our jurisdiction. Indeed, General Statutes § 54-94a, for example, requires a defendant to plead nolo contendere to an offense in order to gain review of an adverse trial court decision on a motion to suppress, even when the evidence in question is the only evidence linking the defendant to the crime.

impaired significantly. Nevertheless, the state complains in its brief that it is not practical to "require the state to nolle the underlying charges and have the case dismissed" because, if the state were to prevail on appeal, "it would have to move the trial court to vacate the dismissal and the nolle, file a new information, and have the defendant enter his plea again. Allowing the state to appeal the trial court's order vacating the defendant's judgment of conviction would be a much more efficient and sensible procedure that would maintain the status quo pending resolution of the appeal."[4] As in *Southard*, the state's claim in the present appeal bears no significant distinction from "any of the myriad evidentiary and procedural rulings which might possibly disadvantage the state during the course of a criminal proceeding, such as orders excluding evidence, requiring disclosure of information or granting changes of venue." *State* v. *Southard*, supra, 191 Conn. 512. Consequently, the state's claim here no more satisfies the second prong of *Curcio* than did the state's claim in *Southard*. As this court stated in *State* v. *Ross*, supra, 189 Conn. 50–51, and reiterated in *State* v. *Joyner*, 255 Conn. 477, 486–87, 774 A.2d 927 (2001), the state's willingness to have the charges dismissed provides the assurance that the appellate procedure has not been resorted to lightly.

The state also claims that General Statutes § 54-1j[5] gives this court jurisdiction to consider this appeal.

---

[4] I note that a remand in this case, had the state properly dismissed the charges prior to filing its appeal, would be less complicated than the state's scenario threatens. If the state were to prevail on appeal, as it in fact does here, the trial court could be ordered, as part of this court's remand, to vacate the dismissal and reinstate the guilty plea and the sentence.

[5] General Statutes § 54-1j provides: "Court instruction on possible immigration and naturalization ramifications of guilty or nolo contendere plea. (a) The court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the court advises him of the following: 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to

That statute vests jurisdiction in the trial court to revisit a plea canvass after a sentence has been imposed; see *State* v. *Parra*, 251 Conn. 617, 741 A.2d 902 (1999); it does not confer jurisdiction on this court to consider an interlocutory appeal.

As this court previously has stated, "unless the appeal is authorized under the *Curcio* criteria, absence of a final judgment is a jurisdictional defect that results in a dismissal of the appeal." *State* v. *Paolella*, supra, 210 Conn. 119; see *Guerin* v. *Norton*, 167 Conn. 282, 283, 355 A.2d 255 (1974). Therefore, I would dismiss the state's appeal.

Accordingly, I respectfully dissent.