STATE OF CONNECTICUT *v.* VALDIR M. LAGE
(AC 32945)

Beach, Espinosa and Dupont, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 14, 2012—officially released March 26, 2013

*April E. Brodeur*, assigned counsel, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Marjorie L. Sozanski*, assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Valdir M. Lage, appeals from the trial court's judgment denying his motion to vacate the judgments and withdraw his guilty pleas, related to six distinct charges,[1] which he entered at two separate proceedings. The present appeal is complicated by the fact that it represents the culmination of a series of charges and guilty pleas thereto, which resulted in a prison sentence and probation for each offense. The probation in each instance was violated by the defendant's subsequent arrest, with each arrest providing the basis for another sentence of probation, as well as the new substantive crime. On appeal, the defendant claims that the court erred in denying his motion to vacate the judgments and withdraw his guilty pleas because (1) the court failed to comply with the

---

[1] Between 2005 and the filing of the defendant's 2010 motion to vacate the judgments and withdraw his guilty pleas, he was charged and subsequently convicted of: possession of narcotics in violation of General Statutes § 21a-279 (a); burglary in the third degree in violation of General Statutes § 53a-103; criminal trespass in violation of General Statutes § 53a-107; interfering with an officer in violation of General Statutes § 53a-167a; criminal mischief in the third degree in violation of General Statutes § 53a-117; and two separate violations of probation in violation of General Statutes § 53a-32. The defendant's pleas with regard to each of these charges, except his guilty plea to possession of narcotics, are at issue on appeal.

requirements of General Statutes § 54-1j[2] when it canvassed the defendant before accepting his plea of guilty to a violation of probation from a prior conviction of possession of narcotics and for the crime of burglary in the third degree, and (2) none of the defendant's six pleas were entered knowingly, intelligently or voluntarily because the court's canvass was improper and, therefore, violated his constitutional rights. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The defendant is a permanent resident of the United States. He came to the United States from Brazil and has been a lawful permanent resident since childhood, although he never acquired citizenship.[3] On December 20, 2005, the defendant entered a

[2] General Statutes § 54-1j provides in relevant part: "(a) The court shall not accept a plea of guilty . . . from any defendant in any criminal proceeding unless the court first addresses the defendant personally and determines that the defendant fully understands that if the defendant is not a citizen of the United States, conviction of the offense for which the defendant has been charged may have the consequences of deportation or removal from the United States, exclusion from readmission to the United States or denial of naturalization, pursuant to the laws of the United States. If the defendant has not discussed these possible consequences with the defendant's attorney, the court shall permit the defendant to do so prior to accepting the defendant's plea.

"(b) The defendant shall not be required at the time of the plea to disclose the defendant's legal status in the United States to the court.

"(c) If the court fails to address the defendant personally and determine that the defendant fully understands the possible consequences of the defendant's plea, as required in subsection (a) of this section, and the defendant not later than three years after the acceptance of the plea shows that the defendant's plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty . . . and enter a plea of not guilty."

[3] The Child Citizenship Act of 2000 provides in relevant part: "(a) A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled: (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization. (2) The child is under the age of eighteen years [and] (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent

guilty plea to possession of narcotics in violation of General Statutes § 21a-279 (a). The court canvassed the defendant and, after accepting his plea as satisfactory, sentenced him to one year incarceration, execution suspended, and two years of probation.

On April 3, 2008, the defendant pleaded guilty to burglary in the third degree, as well as admitting the violation of his 2005 probation resulting from the burglary conviction[4] (2008 proceeding). The court, *Sequino, J.*, canvassed the defendant, asking if the pleas were entered voluntarily, if he had had an opportunity to discuss his pleas with his counsel and if he understood the possible immigration consequences of his pleas. After accepting the defendant's answers as satisfactory, the court sentenced him to three years incarceration, execution suspended after nine months, and three years of probation.

Subsequently, on September 8, 2009, the defendant admitted violating his probation in relation to the 2008

residence. . . ." 8 U.S.C. § 1431 (a) (2012). This law became effective in 2001 but is not retroactive, and, therefore, does not confer citizenship on the defendant, who came to the United States in the 1980s as a child and was subsequently adopted by United States citizens.

The defendant may have believed at one point that he was a United States citizen, as indicated by his answer to a question asked by the trial judge who accepted his plea of guilty to the possession of narcotics charge in 2005. We note that § 54-1j leaves open the question of whether the statute allows a defendant to withdraw a plea if he has reason to mistakenly believe that he is a citizen of the United States and that deportation or other consequences do not apply to him, particularly because § 54-1j (b) does not allow the court to review his "legal status" in the United States. No case has yet interpreted the statute in this regard, which is within the province of the legislature, and we need not interpret the statute for the purposes of this decision.

[4] The violation of probation charges arose from the defendant's sentence on a former charge of possession of narcotics, to which he pleaded guilty in 2005, as well as his 2008 conviction of burglary in the third degree. The defendant's motion to vacate his guilty plea, however, did not reference the substantive 2005 conviction of possession of narcotics but, rather, included only his admission to a violation of probation stemming from that conviction.

burglary conviction and pleaded guilty to separate charges of criminal trespass in the first degree in violation of General Statutes § 53a-107, interfering with an officer/resisting arrest in violation of General Statutes § 53a-167a and criminal mischief in the third degree in violation of General Statutes § 53a-117 (2009 proceeding). The defendant intended to enter a plea of guilty to each of these charges, which might have resulted in a suspended sentence with a possibility of up to twenty-seven months of incarceration, predicated on his willingness to enter and complete a drug treatment program. He indicated to the court that he had discussed the plea fully with his attorney and was satisfied with the advice he had received.

During the canvass, however, it came to the court's attention that the defendant was subject to a United States Bureau of Immigration and Customs Enforcement (immigration bureau) detainer based on his 2008 burglary conviction because he was not a United States citizen, and this detainer could preclude his participation in the treatment program. After a sidebar with the defendant's counsel, the court explained to the defendant that there was such a detainer, which might prohibit him from being released into the treatment program. The court told the defendant that if he were prohibited from entering the program, he would still have a chance to accept an alternate sentence of eighteen months incarceration without probation.

At that point, the court continued the canvass of the defendant, asking him specifically if he understood the possible immigration consequences of his plea and if he had gone over these with his attorney, to which the defendant answered in the affirmative. After the court was satisfied that the defendant's pleas were being entered intelligently, knowingly and voluntarily, it continued the sentencing hearing until the defendant's eligibility for the treatment program could be determined.

At the subsequent sentencing hearing, the defendant's counsel indicated that the immigration bureau intended to detain the defendant, and the court, therefore, rendered an eighteen month sentence without probation against him in lieu of a possible maximum twenty-seven month sentence predicated on completion of the treatment program. The defendant was detained by the immigration bureau following the proceeding.[5] He subsequently moved the court to withdraw and vacate his pleas from the 2008 and 2009 proceedings. Additional facts will be set forth as necessary.

A hearing was held on December 20, 2010, on the defendant's motion to vacate the judgments and withdraw his admissions and guilty pleas from the 2008 and 2009 proceedings on the basis of the court's allegedly improper canvassing and failure to comply with § 54-1j. The court denied the defendant's motion in its entirety, holding that the court substantially complied with the statutory requirements of § 54-1j, addressed the defendant personally, determined that he had spoken with his attorney and that he understood the possible immigration consequences of his pleas. This appeal followed.[6]

I

The principal issue in this appeal is whether the court substantially complied with the requirements of § 54-1j when it accepted the defendant's guilty pleas at the

---

[5] The defendant is not presently in custody of the immigration bureau. Further, in addition to the present appeal, he had also filed a habeas petition in 2010, which is currently pending and scheduled for trial in May, 2013.

[6] The state argues that the defendant's 2008 conviction of burglary in the third degree is beyond the scope of this appeal. Although the defendant did not file a timely appeal, this court granted his motion for permission to file a late appeal and granted his motion to amend that appeal to include the convictions springing from his plea of guilty to burglary in the third degree. The state claims that this court's order did not include both the conviction of the substantive offense and the finding of violation of probation. We disagree and, therefore, review the defendant's claims of error.

2008 proceeding.[7] The defendant claims that the court erred in denying his motion to vacate the judgments and withdraw his guilty pleas because the court did not comply substantially with the requirements of § 54-1j when it canvassed him regarding the possible immigration consequences of his pleas. We disagree.

We first set forth our standard of review. "[A guilty] plea, once accepted, may be withdrawn only with the permission of the court. . . . Section 54-1j (c) permits the defendant, not later than three years after the acceptance of his guilty plea, to move to withdraw his plea if he can show that the court failed to comply with the requirements of § 54-1j (a) [during the defendant's plea canvass]. The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused." (Citation omitted; internal quotation marks omitted.) *State* v. *Hall*, 303 Conn. 527, 532–33, 35 A.3d 237 (2012).

The defendant claims that, although the court recited the language of § 54-1j when it canvassed him at the 2008 proceeding, it did not properly determine whether he understood the immigration consequences of his plea. Pursuant to *State* v. *Malcolm*, 257 Conn. 653, 662, 778 A.2d 134 (2001), however, "it [is] not necessary for the trial court to read the statute verbatim . . . [and, instead] only substantial compliance with the statute is required to validate a defendant's guilty plea." Although the court in this case actually recited the

---

[7] Although the defendant also claims that he was not properly canvassed pursuant to § 54-1j at the proceeding in 2005, during which he pleaded guilty to possession of narcotics, he did not move to vacate the judgment and withdraw that plea in his 2010 motion, nor would such a motion have been timely. The defendant's 2005 conviction of the substantive crime of possession of narcotics is, therefore, beyond the scope of this appeal.

statute in its entirety, the defendant argues that the court failed to determine specifically whether he understood the possible immigration consequences of his guilty pleas, or if he had discussed these with his attorney.

In reference to the immigration consequences of the defendant's pleas to burglary in the third degree and violation of probation, the transcript of the canvass of the defendant from the 2008 proceeding provides in relevant part:

"The Court: If you are not a citizen of the United States, this is a felony, it could result in deportation, removal, denial of admission, exclusion from readmission, or denial of naturalization. . . . Any questions about anything I've said?

"The Defendant: No, ma'am.

"The Court: Do you agree to all of that?

"The Defendant: Yes, ma'am.

"The Court: And you discussed it all with your attorney?

"The Defendant: Yes, ma'am.

"The Court: Do you need any more time to talk to him?

"The Defendant: No, ma'am.

"The Court: Did anyone force or threaten you to enter this plea?

"The Defendant: No, ma'am.

"The Court: Are you doing it voluntarily of your own free will?

"The Defendant: Yes, ma'am.

"The Court: Any questions for me about anything I've said or that's happening?

"The Defendant: No, ma'am.

"The Court: Do you have anything you wish to say?

"The Defendant: No.

"The Court: Are you satisfied with your attorney's representation?

"The Defendant: Yes."

During the 2010 hearing on the defendant's motion to withdraw his guilty pleas, the court found that, based on the previously mentioned questioning, the canvass was sufficient. The court noted that § 54-1j does not require that a defendant realize the likelihood of immigration consequences arising from a plea, but rather that he understands the possibility of them. We agree.

The defendant, moreover, claims that the language of § 54-1j requires that the warnings of the statute be delivered separately. He argues that by asking if he agreed with "all of that," the court did not determine if his understanding included the possible immigration consequences of his pleas. The defendant, however, sets forth no legal authority requiring that such questions be asked separately, and we are aware of none. As our Supreme Court made clear in *State* v. *Malcolm*, supra, 257 Conn. 664, the substantial compliance test does not permit a withdrawal of a plea based on imperfect compliance. "[T]his court repeatedly has held that only substantial compliance is required when warning the defendant of the *direct* consequences of a guilty plea . . . . We will not require stricter compliance with regard to the *collateral* consequences of the guilty plea." (Citations omitted; emphasis added.) Id., 662–63.

Furthermore, adequate plea canvasses do not have a set formula, and there is no reason to believe, based on the defendant's responses during the canvass at

issue, that he did not understand the possible consequences of his pleas. A "trial court . . . may properly rely on . . . the responses of the [defendant] at the time he responded to the trial court's plea canvass, in determining that he was adequately informed of the elements of the offense charged." *Bowers* v. *Warden,* 19 Conn. App. 440, 443, 562 A.2d 588, cert. denied, 212 Conn. 817, 565 A.2d 534 (1989). The court's canvass of the defendant in the present case, therefore, was more than sufficient to determine, on the basis of his responses, that he understood the possible immigration consequences of his pleas, and to comport with the requirements of § 54-1j.

The defendant also maintains that the 2008 canvass was insufficient because the court failed to determine if he discussed the possible immigration consequences of his pleas with his attorney. He argues that in order to comply with the requirements of § 54-1j, the court must specifically address the defendant or his counsel regarding their discussion of these consequences, and that the question asked by the court in this case, "[a]nd you discussed it all with your attorney?" did not satisfy this requirement. His claim is without merit.

This court recently held in *State* v. *James,* 139 Conn. App. 308, 57 A.3d 366 (2012), that the language of § 54-1j is plain and unambiguous. The court reasoned that although the statute dictates that "[i]f the defendant has not discussed these possible consequences with the defendant's attorney, the court shall *permit* the defendant to do so prior to accepting the defendant's plea"; (emphasis added) id., 312; this language does not require the court to determine whether the defendant has actually discussed such possible consequences with his counsel. Id., 313. The court further explained that "the plain and unambiguous language of § 54-1j does not require the court to inquire specifically whether defense counsel has advised the defendant regarding

the possible immigration consequences of entering a guilty plea. Section 54-1j requires only that the court address the defendant personally and determine that the defendant understands fully the possible immigration consequences that may result from the plea if the defendant is a noncitizen." Id., 315.

The court's canvass in the present case clearly satisfied this burden with regard to the requirement that the court permit the defendant to discuss the immigration consequences with his attorney. The court specifically asked whether the defendant needed more time to discuss anything with his attorney, and the defendant indicated that he had discussed all the plea consequences with him. Further, the court personally addressed the defendant's counsel when it asked: "Counsel, anything further?" Counsel responded: "No, Your Honor." The court was entitled to rely on this response, through which defense counsel assured the court that the defendant understood the possible consequences of his plea. See *State* v. *Hall*, supra, 303 Conn. 535. Because the court properly complied with the statutory requirements of § 54-1j when it canvassed the defendant at the 2008 proceeding, it did not abuse its discretion by determining that the canvass was satisfactory and denying the defendant's motion to vacate the judgments and withdraw his guilty pleas.

II

The defendant further claims that his various pleas, entered in the 2008 and 2009 proceedings against him, were not entered knowingly, intelligently and voluntarily because the canvass conducted by the trial court in each instance was improper and violated his constitutional rights. The defendant maintains that although he did not raise this issue before the trial court, his claim

is reviewable pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[8] We are not persuaded.

We first set forth the standard of review. "It is a bedrock principle of appellate jurisprudence that, generally, claims of error not raised before the trial court will not be considered by a reviewing court. The principle is rooted in considerations of fairness as well as judicial economy. . . . Nonetheless, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Pacelli*, 132 Conn. App. 408, 411–12, 31 A.3d 891 (2011).

The defendant's claim, which is that the court violated his constitutional rights when it accepted his various guilty pleas, is premised on a litany of different theories, none of which is tenable in this case. The defendant argues that his pleas in both the 2008 and 2009 proceedings were not knowingly, intelligently and

---

[8] The defendant also argues that plain error exists and that we should utilize this court's supervisory authority. We agree with the state that the defendant has not adequately briefed these claims and, therefore, decline to address them. See, e.g., *State* v. *Myers*, 290 Conn. 278, 290–91, 963 A.2d 11 (2009); *State* v. *Elson*, 125 Conn. App. 328, 360, 9 A.3d 731 (2010), cert. granted on other grounds, 300 Conn. 904, 12 A.3d 572 (2011).

voluntarily made because the court (1) did not properly inform him of his right to a jury trial at the 2008 proceeding, (2) did not pause to allow him the opportunity to speak with his attorney after learning of the immigration bureau detainer during the 2009 proceeding and (3) violated Practice Book § 39-19[9] during the canvass in the 2009 proceeding.

A

The defendant maintains that he was not told of his right to a jury trial in the 2008 proceeding because the court only informed him of his right to "a trial" and did not specifically reference a jury trial, as required by Practice Book § 39-19 (5).

The record is adequate for *Golding* review because it contains a full transcript of the plea hearing, and the claim is of constitutional magnitude because an inadequate plea canvass implicates due process rights. See, e.g., *State* v. *Fagan*, 280 Conn. 69, 90, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007). The defendant's claim fails to satisfy the third *Golding* prong, however, because he has not established that a violation of his constitutional right to a jury trial clearly exists.

In order for a guilty plea to comport with due process, the plea must be voluntary and knowingly entered. *Boykin* v. *Alabama*, 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). "[W]e conduct a plenary review

---

[9] Practice Book § 39-19 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered . . .

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

of the circumstances surrounding the plea to determine if it was knowing and voluntary." (Internal quotation marks omitted.) *State* v. *Burgos*, 118 Conn. App. 465, 468, 984 A.2d 77 (2009).

There are three constitutional rights of which a defendant must be cognizant prior to entering a guilty plea. They are (1) the privilege against self-incrimination, (2) the right to a trial by jury and (3) the right to confront accusers. *Boykin* v. *Alabama*, supra, 395 U.S. 243–44. Although the purpose of Practice Book § 39-19 is to ensure that guilty pleas comport with due process, a guilty plea "may satisfy constitutional requirements even in the absence of literal compliance with [its] prophylactic safeguards . . . . In other words, substantial compliance is sufficient." (Citation omitted; internal quotation marks omitted.) *State* v. *Claudio*, 123 Conn. App. 286, 292, 1 A.3d 1131 (2010).

The court's explanation of the defendant's waiver of his right to a trial substantially complied with Practice Book § 39-19 (5), even though the court did not specifically state that he had the right to a *jury* trial. "By expressly mentioning and describing the defendant's right to a trial, and by confirming that the defendant had access to adequate representation, the court substantially complied with Practice Book § 39-19 (5)." Id., 293; see also *State* v. *Badgett*, 200 Conn. 412, 419–20, 512 A.2d 160 (concluding that defendant's plea canvass, which described only his " 'right to trial' " without specifying jury trial, was constitutionally sufficient because trial court expressly mentioned waiver of right to trial and defendant had both prior experience with criminal proceedings and adequate representation), cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

In the present case, the court explained to the defendant that by pleading guilty, he was giving up "the right to have a trial with the assistance of your attorney, your

right to confront and cross-examine witnesses against you, your privilege against self-incrimination, all your right or opportunity to have a trial or a hearing." Moreover, the defendant affirmed that he had discussed his pleas with his attorney, did not need more time to speak with him and was satisfied with his counsel's representation. We conclude, therefore, that the defendant's knowledge of his right to a trial sufficiently advised him of his constitutional right to a jury trial, particularly because he was represented by an attorney. The defendant, thus, cannot satisfy the third prong of *Golding*. Accordingly, we reject this portion of the defendant's second claim.

B

The defendant next repeats his claim that the court's canvass during the 2009 proceeding was improper, not only because it violated § 54-1j, but also because the court did not pause, after learning of the immigration bureau detainer, to allow him to confer with his attorney about the possible immigration consequences of his plea. The defendant argues that because the court did not continue the proceeding so that he could discuss this information with his attorney, he was not properly canvassed concerning his right to a jury trial.[10]

---

[10] The transcript of the canvass of the defendant from the 2009 proceeding provides in relevant part:

"The Court: Okay. So, sir, the most you could get is the twenty-seven months that you owe, that's two years and three months on the violation, and two years and six months on the new counts, so that's four years and nine months and a total of $5000. Now, if you're available to be released to the program on Thursday, the understanding will be twenty-seven months flat.

"It's come to the court's attention that there may be a detainer against you which may prohibit you from being released to a program. If that's the case, sir, then on Thursday you can, if you're not released, have the other offer of eighteen months and resolve the case because you won't be allowed to go to the program. Is that your understanding?

"The Defendant: Yes.

"The Court: Okay. So, it will either release you on Thursday to go into the program or, if there's a detainer, you'll be sentenced to eighteen months

The defendant cannot prevail under *Golding* on his claim that his constitutional right to a jury trial was violated during the 2009 proceeding. The defendant has not met his burden to prove that his constitutional right was somehow violated when he was not afforded time to speak with his counsel following the sidebar discussion. It was not the duty of the court, but that of the defendant's counsel, to request such a conference with the defendant. "Except for those inquiries which are constitutionally mandated or are required by our rules; [Practice Book §§ 39-19 through 39-21]; the court is not obliged to assume the role of the defendant's counselor." (Internal quotation marks omitted.) *State* v. *Brown*, 18 Conn. App. 716, 721, 559 A.2d 1179, cert. denied, 212 Conn. 811, 564 A.2d 1072 (1989). The defendant cites no authority, and we are aware of none, which requires that a court order a continuance *sua sponte* following a sidebar with counsel. "Our Supreme Court expressly has declined to impose on the trial

and you'll have to deal with the detainer when you get out. You understand that?

"The Defendant: Okay.

"The Court: Now, when you plead guilty and admit a violation of probation you give up certain rights, the right to remain silent in all cases; with regard to the violation, the right to deny the violation and have a hearing. At that hearing, the state would have to prove you're in violation by a fair preponderance of the evidence.

"With regard to the criminal offenses, you give up the right to plead not guilty, have a court trial or a jury trial where the state would have to prove you guilty beyond a reasonable doubt. In all cases, you give up the right for your attorney to cross-examine the state's witnesses, call witnesses, and present evidence on your behalf. You understand you give up all of those rights?

"The Defendant: Yes. . . .

"The Court: You understand that if you're not a U.S. citizen, your pleas could result in your deportation, exclusion from the U.S., or denial of naturalization citizenship. You understand that? . . .

"The Defendant: (Affirmative nod.)

"The Court: You have to say yes or no, sir.

"The Defendant: Yes.

"The Court: Is that correct, counsel?

"[The Defendant's Counsel]: That's correct, Your Honor."

courts the duty to order a continuance sua sponte."
*Pasiakos* v. *BJ's Wholesale Club, Inc.*, 93 Conn. App.
641, 645, 889 A.2d 916, cert. denied, 277 Conn. 929, 896
A.2d 101 (2006); see also *State* v. *Gilnite*, 202 Conn.
369, 383 n.17, 521 A.2d 547 (1987) ("[t]he failure to
inform a defendant as to all possible indirect and collat-
eral consequences does not render a plea unintelligent
or involuntary in a constitutional sense").

Furthermore, even if such an opportunity for discus-
sion with counsel had been constitutionally mandated,
the record in this case does not support the assumption
that such a conversation between the defendant and
his counsel had not occurred. After the court discovered
the possible existence of an immigration bureau
detainer, the sentencing hearing was continued for two
days to determine if the defendant was eligible to enter
a treatment program, giving the defendant ample time to
consult with his counsel. When the sentencing hearing
resumed, the defendant's counsel made no indication
that the defendant wanted to withdraw his pleas. The
defendant's affirmative acceptance of the alternate
eighteen month sentence was again confirmed by his
counsel at that hearing, during which he told the court
that the defendant was prepared to accept the eighteen
month sentence. The canvass of the defendant during
the 2009 proceeding, therefore, sufficiently advised him
of his constitutional right to a jury trial, and the pleas
were voluntarily entered. As the defendant has not satis-
fied the third prong of *Golding*, we accordingly reject
this part of his second claim.

C

Finally, the defendant claims that the court improp-
erly failed to make a finding as to the voluntariness of
his pleas in the 2008 proceeding and violated Practice
Book § 39-19 by failing to advise him of his right to
counsel and his right against self-incrimination. These

claims, however, are baldly asserted without adequate briefing. "Where an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . [C]laims on appeal that are inadequately briefed are deemed abandoned." (Citation omitted; internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 281 n.30, 764 A.2d 1251 (2001). We decline, therefore, to consider these claims.

The court properly complied with § 54-1j when it canvassed the defendant with respect to the possible immigration consequences of his pleas during the 2008 proceeding, and properly · accepted the defendant's pleas of guilty at the 2008 and 2009 proceedings because they were entered knowingly, intelligently and voluntarily. The court, therefore, was within its discretion in denying the defendant's motion to vacate the judgments and withdraw his guilty pleas.

The judgment is affirmed.

In this opinion the other judges concurred.