STATE OF CONNECTICUT *v.* ANTHONY L. HENRY
(AC 30509)

Flynn, C. J., and Robinson and West, Js.

Argued May 28—officially released October 6, 2009

*Leopold P. DeFusco*, special public defender, for the appellant (defendant).

*Tamara A. Grosso*, special deputy assistant state's attorney, with whom were *Michael E. O'Hare*, supervisory assistant state's attorney, and, on the brief, *David I. Cohen*, state's attorney, and *Suzanne M. Vieux*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Anthony L. Henry, appeals from the judgment of the trial court denying

his motion to correct an illegal sentence. On appeal, the defendant claims that the court improperly failed to credit him for 411 days of presentence confinement that he was supposed to receive pursuant to a plea agreement he entered on June 15, 2005. We affirm the judgment of the trial court.

The following undisputed facts and procedural background are relevant to our resolution of the defendant's appeal. The defendant was arrested and charged on three separate occasions with, inter alia, the sale of illegal drugs by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). The arrests occurred on September 25, 2003, and March 2 and April 15, 2004. After each arrest, the defendant immediately posted bond and was released. On April 30, 2004, the defendant was taken into custody because of an error with the bond he posted for the March 2, 2004 arrest. For the next fifty-five days, he remained in custody. On June 24, 2004, the bond for his first arrest was raised and not posted. As a result, the defendant remained incarcerated for an additional seventy-five days. Thereafter, on September 7, 2004, the defendant pleaded guilty to possession of narcotics with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b) for the charge related to the September 25, 2003 arrest. He was sentenced to a term of five years imprisonment.

On June 15, 2005, 281 days after his initial guilty plea, the defendant pleaded guilty to possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) and criminal impersonation in violation of General Statutes § 53a-130. The guilty pleas arose out of his arrest on March 2, 2004, and were entered as part of a plea agreement reached with the state.[1] The defendant

---

[1] As part of the plea agreement, the state agreed to enter a nolle prosequi on the remaining charges pending against the defendant, including the charges stemming from his arrest on April 15, 2004.

then was sentenced to six years imprisonment for the violation of § 21a-277 (a) and six months imprisonment for the violation of § 53a-130. The sentences were ordered to run concurrently with each other and with his original five year sentence for a total effective sentence of six years to serve, followed by six years special parole.

On September 9, 2008, after learning that he would receive zero credit for the time he was in custody between April 30, 2004, and June 14, 2005, the defendant filed a motion to correct an illegal sentence. The defendant requested the court to provide 412 days of credit for his pretrial confinement.[2] After an evidentiary hearing, the court denied the motion on September 29, 2008. This appeal followed. Additional facts will be set forth as necessary.

We note from the outset that the defendant agrees that he is not entitled to a presentence confinement credit pursuant to General Statutes § 18-98d (a) (1). Rather, the defendant maintains that his sentence was imposed in an illegal manner because he was entitled to, but did not receive, a presentence credit as a result of the plea agreement entered on June 15, 2005. He argues that the terms of this plea agreement were ambiguous, and, therefore, the terms should be construed in his favor.

Practice Book § 43-22 provides that "[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." "Sentences imposed in an

[2] We note that the record reflects requests for 412 and 411 days without providing an explanation for the discrepancy. The defendant's motion to correct includes a request for 412 days of presentence credit while the appeal to this court argues that the trial court improperly failed to credit the defendant for 411 days of presentence confinement credit.

illegal manner have been defined as being 'within the relevant statutory limits but . . . imposed in a way which violates [the] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, *or his right that the government keep its plea agreement promises* . . . .' " (Emphasis added.) *State* v. *McNellis*, 15 Conn. App. 416, 444, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988); see also *State* v. *Pagan*, 75 Conn. App. 423, 430, 816 A.2d 635, cert. denied, 265 Conn. 901, 829 A.2d 420 (2003).

"We will reverse the court's denial of the [defendant's] motion to correct the sentence only on a showing that the court abused its discretion. . . . Furthermore, in reviewing the [defendant's] claims, we do not question credibility determinations reached by the court, for the trial court is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . Additionally, the [defendant] can prevail in his challenge to the trial court's factual findings only if those findings are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *State* v. *Dixson*, 93 Conn. App. 171, 176–77, 888 A.2d 1088, cert. denied, 277 Conn. 917, 895 A.2d 790 (2006).

On the basis of our review of the record, we conclude that the court did not abuse its discretion by denying the motion to correct an illegal sentence because the presentence credit was not a negotiated term of the plea agreement. Although the transcript from the sentencing hearing reveals that there was some dispute regarding what credits the defendant was entitled to for time spent in custody prior to the second guilty plea, it does not suggest any ambiguity in the plea agreement itself. The following colloquy between the court and counsel

immediately following the defendant's guilty plea is significant to this conclusion:

"The Court: All right. The court will find that the plea is—the pleas are knowingly and voluntarily made with the assistance of competent counsel, that there is a factual basis for the pleas. The pleas are accepted and a finding of guilty may enter. Anything else?

"[Defense Counsel]: Just, Your Honor, with respect to jail credit, [the defendant]—there were some issues that came up that may result in a little problem, and I'm just asking Your Honor to order that any jail credit he's entitled to back to April—

"[The Defendant]: Thirtieth.

"[Defense Counsel]:—thirtieth of 2004, be given to him in this case. There was an issue of bonding out when—and stuff of that nature. In addition, he's a sentenced prisoner out of Stamford court. But if Your Honor says that he's to get his credit back to April 30, 2004, there should be no issues over that.

"[The Prosecutor]: The state has no objection to that being put on the mittimus Your Honor; *however, I just want the record to reflect that the spirit of the agreement that the state of Connecticut has entered into is that he is to get his six years to serve and six [years] special parole, and that this plea is being struck today.* To the extent that he is entitled to credit and [the department of correction] gives that to him, that's great. But as far as the state of Connecticut is concerned, he's starting his time now . . . .

"[Defense Counsel]: He understands that, Your Honor." (Emphasis added.)

Thereafter, the court and the defendant, through his counsel, engaged in a discussion of what credits the defendant was "entitled to." A clear result was not

decided, and the court concluded: "I'm sentencing you to six years in jail. What they want to do up there is entirely up to them. But I will state on the [mittimus] with what we've agreed to." The court then ordered that the defendant was to receive whatever credit he was entitled to.

It is this discussion and resulting order that forms the basis of the defendant's argument that the plea agreement was ambiguous. We are not persuaded by this argument because the transcript reflects that the plea agreement was for six years incarceration and six years special parole. The state clarified the terms of the agreement, and the defendant and his counsel did not indicate that this contradicted their understanding of the terms. See *State* v. *Cazzetta*, 97 Conn. App. 56, 60–61, 903 A.2d 659 (2006) (trial court reasonably concluded defendant cannot claim he was surprised by sentence because he had opportunity to indicate imposed sentence inconsistent with plea agreement). Our review of the transcript as a whole indicates that any discussion of jail time credit occurred separate from the plea agreement.[3] Accordingly, the court did not abuse its discretion by denying the defendant's motion to correct an illegal sentence.

We also find it significant that despite the argument that the plea agreement was ambiguous and resulted in the defendant's not receiving what he thought he had bargained for, counsel for the defendant repeatedly argued in support of his motion to correct that *the fair result* was to credit the defendant for *at least a portion*

[3] At the hearing on the motion to correct an illegal sentence, the defendant testified that he was expecting a credit but that his expectation was based on his assumptions. Specifically, he stated that he had been advised by his attorney that a request would be made for the credits but that no promises were made that the request would be successful. The defendant was asked whether his assumption was based on any promises made by his attorney, the court or the state, and the defendant responded in the negative.

*of the time* served prior to the entry of the second guilty plea. The following colloquy from the hearing on the motion to correct is revealing:

"[Defense Counsel]: First of all, again, he's going to do over seven years, and what we're asking Your Honor to do today is, if Your Honor didn't feel that he should get credit for his dead time after he became a sentenced prisoner, that 281 days, at the very least, we would ask you to give him credit for the 130 days that he didn't get because he pleaded on the wrong file here and because his bond was raised in Stamford. . . . I would think that . . . anyone would see that at the very least, it would be reasonable to give him the 130 days that he lost for no good reason. The 281 days that he lost because he was a sentenced prisoner, I'd like to have you order that as well because I feel that the discussions during the plea agreement were ambiguous, and you ought to go with what he expected to get, which was the whole 411 or 412 days . . . .[4]

"The Court: I disagree with you there. I disagree.

"[Defense Counsel]: Judge, I just think that fairness requires when you started his jail on April 30, 2004, he had been in already four and one-half. He's going to end up doing over seven of a six [year sentence]. That is just not fair.

---

[4] We note that the defendant's counsel at his sentencing hearing clearly indicated that the defendant was not seeking credit for the 281 days he was incarcerated as a sentenced prisoner. Counsel stated: "He has been held on this case since April 30 of last year. There is a part of time when he was a sentenced prisoner. He understands that that credit is not going to be applied, but time prior to the sentencing is what we're concerned about." This statement undermines the defendant's claim that he believed his plea agreement included 411 or 412 days of jail time credit. Furthermore, immediately following this statement by counsel, the defendant addressed the court and therefore had the opportunity to correct his counsel's statement if he believed that it was in error. See *State* v. *Cazzetta,* supra, 97 Conn. App. 61.

"The Court: Well, he pleaded guilty, and his plea bargain gave him six years and that's what I sentenced him to."

This exchange lends further support for our conclusion that the court did not abuse its discretion in denying the defendant's motion to correct an illegal sentence. Although the defendant argues that the plea agreement was ambiguous, his arguments to the court in actuality were premised on what he perceived to be the fair result, not what he believed to be the terms of his plea agreement.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] A subsequent statement by defense counsel at the September 29, 2008 hearing lends further support to our conclusion: "I was just going to respectfully request that the court either grant him the entire 412 days, which is from the day he went in until the time he was sentenced or, at the very least, the fifty-five days that he lost because he pleaded on the wrong file or the 130 days that he lost because he pleaded on the wrong file and then has his bond reduced in Stamford and lost that credit; so, either fifty-five, 130 or 412, and that's all, Your Honor."