# STATE OF CONNECTICUT *v.* OSIBISA HALL
## (AC 30816)

Bishop, DiPentima and Schaller, Js.*

Argued January 6—officially released April 20, 2010

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

490

*Erin M. Field,* for the appellant (defendant).

*Laurie N. Feldman,* special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, and *Anthony J. Spinella,* assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Osibisa Hall, appeals from the trial court's judgments of conviction, which were rendered following the denial of his motion to withdraw his guilty pleas to one count of possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b) and two counts of violation of a protective order in violation of General Statutes § 53a-223. On appeal, the defendant claims that the court abused its discretion in denying his motion because it failed to address him personally and determine that he fully understood the potential immigration consequences of his pleas pursuant to General Statutes § 54-1j (a). We agree and, accordingly, reverse the judgments of the trial court.

The following factual and procedural history is relevant to our disposition of the defendant's appeal. On

May 22, 2007, the defendant pleaded guilty, pursuant to the *Alford* doctrine,[1] to one count of possession of marijuana with intent to sell and two counts of violation of a protective order. During the plea hearing, the court questioned the defendant as to his understanding of the rights he was waiving, the meaning of his *Alford* plea and the agreed upon sentence. The court then addressed defense counsel and the following collo-quy ensued:

"The Court: Any immigration issues here, [defense counsel]?

"[Defense Counsel]: Yes, there are, Your Honor.

"The Court: Have you talked to [the defendant]?

"[Defense Counsel]: Yes, I have.

"The Court: All right. And he understands the possible consequences of his pleas?

"[Defense Counsel]: Yes."

The court then accepted the defendant's pleas and found that they were made voluntarily. The court also made a finding that the defendant "has been advised by his counsel of the immigration consequences of his acts." The discussion then turned to the start date of the defendant's sentence, and the court asked again about immigration, as follows:

"The Court: Is there an immigration sticker on him?

"[Defense Counsel]: There is no immigration sticker as I know of. But I know that—

"[The Prosecutor]: He's going to be deported. I looked into it when we did the . . . [and] we talked and then when we did the [violation of probation] hearing that's what they told us.

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 35, 91 S. Ct 160, 27 L. Ed. 2d 162 (1970).

"The Court: All right."

After further discussion, the court sentenced the defendant to forty months incarceration.

On January 13, 2009, the defendant filed a motion to withdraw his guilty pleas and vacate the judgments of conviction, claiming that the court did not fulfill its obligation pursuant to § 54-1j (a) to address him personally and determine that he understood the immigration consequences of his pleas.[2] On January 27, 2009, the court denied the defendant's motion, stating, "In reading the transcript of the sentence, the issue of immigration was directly addressed to counsel for the defendant in which he indicates he discussed the immigration issues with his client and that the client understood the immigration consequence of his plea. Along in the canvass . . . the state brought up the fact that the defendant is going to be deported." (Internal quotation marks omitted.) This appeal followed.

---

[2] General Statutes § 54-1j provides: "(a) The court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the court first addresses the defendant personally and determines that the defendant fully understands that if the defendant is not a citizen of the United States, conviction of the offense for which the defendant has been charged may have the consequences of deportation or removal from the United States, exclusion from readmission to the United States or denial of naturalization, pursuant to the laws of the United States. If the defendant has not discussed these possible consequences with the defendant's attorney, the court shall permit the defendant to do so prior to accepting the defendant's plea.

"(b) The defendant shall not be required at the time of the plea to disclose the defendant's legal status in the United States to the court.

"(c) If the court fails to address the defendant personally and determine that the defendant fully understands the possible consequences of the defendant's plea, as required in subsection (a) of this section, and the defendant not later than three years after the acceptance of the plea shows that the defendant's plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty."

The defendant claims that the court did not comply with § 54-1j (a) before accepting his pleas. Specifically, the defendant contends that the court failed to address him personally or to determine that he understood that his immigration status might be adversely affected by his guilty pleas. The state contends that the court substantially complied with the mandates of § 54-1j (a) and that the defendant knew that his guilty pleas might subject him to deportation. We agree with the defendant.

"The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea . . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused." (Citation omitted; internal quotation marks omitted.) *State* v. *Carmelo T.*, 110 Conn. App. 543, 549, 955 A.2d 687, cert. denied, 289 Conn. 950, 960 A.2d 1037 (2008).

Generally, a guilty plea may not be withdrawn after the conclusion of the proceeding at which the sentence was imposed. See Practice Book § 39-26. An exception to that rule, however, is if the legislature grants the defendant the right to withdraw his plea after the time of sentencing. Section 54-1j (c) specifically requires the court to permit a defendant to withdraw a guilty plea within three years after the acceptance of the plea "[i]f the court fails to address the defendant personally and determine that the defendant fully understands the possible consequences of the defendant's plea, as required in subsection (a) of this section . . . ."

Section 54-1j (a) requires the court to address the defendant personally and to instruct a defendant on possible immigration and naturalization consequences

that may result from a guilty plea and to ensure that the defendant fully understands those potential consequences. Our Supreme Court has previously stated that the legislative intent behind § 54-1j, "rather than demanding that trial courts instruct defendants on the intricacies of immigration law, seeks only to put defendants on notice that their resident status could be implicated by the plea." *State* v. *Malcolm*, 257 Conn. 653, 663–64, 778 A.2d 134 (2001). The statute's purpose is simply to recognize that "this collateral consequence is of such importance that the defendant should be informed of its possibility." (Internal quotation marks omitted.) Id., 663 n.12. The court held that, in canvassing the defendant, it is not necessary for the trial court to read the statute verbatim. Rather, "only substantial compliance with the statute is required to validate a defendant's guilty plea." Id., 662.[3]

Here, the court did not substantially comply with the mandates of § 54-1j (a).[4] At no time during the plea

[3] Similarly, our courts repeatedly have held that "only substantial compliance is required when warning the defendant of the direct consequences of a . . . plea pursuant to Practice Book § 39-19 in order to ensure that the plea is voluntary pursuant to Practice Book § 39-20." *State* v. *Malcolm*, supra, 257 Conn. 662. "[A]s determined in a case-by-case evaluation, only substantial compliance with those rules of practice is necessary to arrive at the conclusion that the defendant's pleas were made knowingly and voluntarily . . . ." *State* v. *Irala*, 68 Conn. App. 499, 510–11, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002).

[4] By contrast, we note that in *State* v. *Malcolm*, supra, 257 Conn. 653, the defendant claimed that the trial court did not comply with § 54-1j because it advised him only of the possibility of deportation and denial of readmission, but not of denial of naturalization. Our Supreme Court held that "[b]y instructing the defendant that he could be deported or excluded from readmission to the United States, the trial court . . . substantially complied with § 54-1j" because the defendant "was warned adequately that his immigration status could be implicated by his guilty plea." Id., 664.

In *State* v. *Irala*, 68 Conn. App. 499, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002), this court held that the trial court substantially complied with § 54-1j and adequately warned the defendant of the immigration consequences of her pleas in instructing the defendant that "her pleas could result in deportation if she was not a citizen of the United States." Id., 519.

hearing did the court personally address the defendant regarding the potential immigration consequences of his pleas. Nor did the court recite those consequences as part of its canvass. The court's inquiry of defense counsel as to whether there were "[a]ny immigration issues here" and whether counsel "talked to" the defendant cannot be construed as compliance with the requirement that the court personally address the defendant or the statutory advisement that the defendant's conviction "may have the consequences of deportation or removal from the United States, exclusion from readmission to the United Sates or denial of naturalization . . . ." General Statutes § 54-1j (a).

The state argues that the court's lack of literal compliance with the mandates of § 54-1j (a) is irrelevant because the defendant knew that his pleas might result in deportation.[5] Acceptance of this argument would render the requirements of § 54-1j (a) meaningless as

In *State* v. *Webb*, 62 Conn. App. 805, 772 A.2d 690 (2001), this court found that the trial court substantially complied with § 54-1j when it advised the defendant, "[i]f you're not a citizen of the United States, you are advised that a conviction of the offense for which you are charged may have consequences of deportation, denial of naturalization or exclusion from the United States." (Internal quotation marks omitted.) Id., 808.

Section 54-1j (a) was amended in 2003 to increase the court's obligation at the time of the plea canvass. The amendment replaced the requirement that the court "advise" the defendant with the greater requirement that the court not accept a plea until it "addresses the defendant personally and determines that the defendant fully understands" that the plea might have immigration consequences. See Public Acts 2003, No. 03-81, § 1. The amendment does not alter the applicability of the aforementioned cases to the case at hand where the court did not, in any meaningful way, comply with the mandates of § 54-1j (a).

[5] In making this argument, the state relies on the tests regarding substantial compliance with Practice Book §§ 39-19 and 39-20. In *State* v. *James*, 197 Conn. 358, 497 A.2d 402 (1985), our Supreme Court concluded that when determining whether there has been substantial compliance with Practice Book § 39-19 (4), formerly Practice Book § 711 (4), we must conduct a two part inquiry. Id., 361–66. Our first inquiry is to determine whether the court accepted the defendant's pleas without first determining whether he was aware of and understood the maximum possible sentence to which he was exposed. Id., 364. Next, if we conclude that the court failed to determine whether the defendant was aware of and understood the maximum possible

applied to the facts of this case. Even if substantial compliance can be shown by the defendant's actual knowledge of the immigration consequences of his pleas, the record does not reflect that the defendant had such knowledge at the time of his pleas. The state's contention that the defendant was aware of the immigration consequences of his pleas is based on his testimony at a violation of probation hearing held several months earlier, on October 30, 2006, during which the defendant testified that he is not an American citizen and that he is "deportable."[6] The defendant's testimony in October that he is deportable does not demonstrate that he was aware that his convictions could result in deportation, removal, denial of readmission or denial of naturalization. In fact, the defendant's testimony indicates merely that the defendant was aware of his legal status as deportable apart from the potential consequences of a criminal conviction.

The state also argues that the defendant knew of the immigration consequences of his pleas on the basis of the prosecutor's comment *after* the court accepted his pleas that the defendant was going to be deported. Because this comment was made after the court's

sentence, we examine the record to determine whether, despite the court's failure, he nevertheless had actual knowledge of the maximum possible consequences of his pleas. See id.; see also *State* v. *Bowden*, 53 Conn. App. 243, 247–52, 729 A.2d 795 (1999). If either prong is satisfied, the pleas were accepted with substantial compliance with Practice Book § 39-19 (4).

The test for substantial compliance with Practice Book § 39-20 "is whether, in light of all of the circumstances, the trial court's literal compliance with [Practice Book] § 39-20 would have made any difference in the trial court's determination that the plea was voluntary." (Internal quotation marks omitted.) *State* v. *Carmelo T.*, supra, 110 Conn. App. 556.

In the case at hand, there was neither literal nor substantial compliance.

[6] The defendant's attorney attempted to follow up on the defendant's answer by asking, "So, does that mean—what does that mean, as far as you understand that?" The state objected to that question, and the court sustained the objection.

acceptance of the defendant's guilty pleas, it cannot be construed as part of the plea canvass.

On the basis of the foregoing, we conclude that the court did not substantially comply with the requirements of § 54-1j. Accordingly, the court abused its discretion in denying the defendant's motion to withdraw his guilty pleas.

The judgments are reversed and the case is remanded with direction to grant the defendant's motion to withdraw his guilty pleas and for further proceedings according to law.

In this opinion the other judges concurred.

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.