STATE OF CONNECTICUT *v.* OSIBISA HALL
(SC 18621)

Rogers, C. J., and Norcott, Palmer, Zarella, Eveleigh, Harper and
Vertefeuille, Js.

Argued October 26, 2011—officially released January 24, 2012

*Laurie N. Feldman,* special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, and *Anthony J. Spinella,* assistant state's attorney, for the appellant (state).

*Erin M. Field,* for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The issue in the present case is whether, in conducting a plea canvass of the defendant, Osibisa Hall, the trial court substantially complied with General Statutes § 54-1j,[1] which seeks to ensure that defendants understand the potential immigration consequences of their guilty pleas. The state appeals, fol-

[1] General Statutes § 54-1j provides: "(a) The court shall not accept a plea of guilty or nolo contendre from any defendant in any criminal proceeding unless the court first addresses the defendant personally and determines that the defendant fully understands that if the defendant is not a citizen of the United States, conviction of the offense for which the defendant has been charged may have the consequences of deportation or removal from the United States, exclusion from readmission to the United States or denial of naturalization, pursuant to the laws of the United States. If the defendant has not discussed these possible consequences with the defendant's attorney, the court shall permit the defendant to do so prior to accepting the defendant's plea.

"(b) The defendant shall not be required at the time of the plea to disclose the defendant's legal status in the United States to the court.

"(c) If the court fails to address the defendant personally and determine that the defendant fully understands the possible consequences of the defendant's plea, as required in subsection (a) of this section, and the defendant not later than three years after the acceptance of the plea shows that the defendant's plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty."

lowing our grant of certification,[2] from the judgment of the Appellate Court reversing the trial court's denial of the defendant's motion to vacate and withdraw his guilty pleas to one count of possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b) and two counts of violation of a protective order in violation of General Statutes § 53a-223. On appeal, the state claims that the Appellate Court improperly concluded that the trial court abused its discretion in denying the defendant's motion because it failed to address the defendant personally and to determine that he fully understood the potential immigration consequences of his plea pursuant to § 54-1j. We agree with the state, and, accordingly, we reverse the judgment of the Appellate Court.

The following undisputed facts and procedural history are set forth in the opinion of the Appellate Court. "On May 22, 2007, the defendant pleaded guilty, pursuant to the *Alford* doctrine,[3] to one count of possession of marijuana with intent to sell and two counts of violation of a protective order. During the plea hearing, the court questioned the defendant as to his understanding of the rights he was waiving, the meaning of his *Alford* plea and the agreed upon sentence. The court then addressed defense counsel and the following colloquy ensued:

" 'The Court: Any immigration issues here, [defense counsel]?

" '[Defense Counsel]: Yes, there are, Your Honor.

" 'The Court: Have you talked to [the defendant]?

" '[Defense Counsel]: Yes, I have.

---

[2] We granted the state's petition for certification, limited to the following issue: "Did the Appellate Court improperly reverse the trial court's denial of the defendant's motion to withdraw his plea based on the trial court's failure to properly address the defendant regarding the possible consequence of deportation?" *State* v. *Hall*, 297 Conn. 910, 910–11, 995 A.2d 638 (2010).

[3] See *North Carolina* v. *Alford*, 400 U.S. 25, 35, 91 S. Ct. 160, 21 L. Ed. 2d 162 (1970).

" 'The Court: All right. And he understands the possible consequences of his pleas?

" '[Defense Counsel]: Yes.'

"The court then accepted the defendant's pleas and found that they were made voluntarily. The court also made a finding that the defendant 'has been advised by his counsel of the immigration consequences of his acts.' The discussion then turned to the start date of the defendant's sentence, and the court asked again about immigration as follows:

" 'The Court: Is there an immigration sticker on him?

" '[Defense Counsel]: There is no immigration sticker as [far as] I know of. But I know that—

" '[The Prosecutor]: He's going to be deported. I looked into it when we did the . . . [and] we talked and then when we did the [violation of probation] hearing that's what they told us.

" 'The Court: All right.'

"After further discussion, the court sentenced the defendant to forty months incarceration.

"On January 13, 2009, the defendant filed a motion to withdraw his guilty pleas and vacate the judgments of conviction, claiming that the court did not fulfill its obligation pursuant to § 54-1j (a) to address him personally and determine that he understood the immigration consequences of his pleas. On January 27, 2009, the [trial] court denied the defendant's motion, stating, '[i]n reading the transcript of the sentence, the issue of immigration was directly addressed to counsel for the defendant in which he indicates he discussed the immigration issues with his client and that the client understood the immigration consequence of his plea[s]. Along in the canvass . . . the state brought up the fact that

the defendant is going to be deported.' " *State* v. *Hall*, 120 Conn. App. 489, 490–92, 992 A.2d 343 (2010).

Following the trial court's denial of his motion, the defendant appealed from the trial court's judgments to the Appellate Court, claiming that the trial court abused its discretion when it concluded that § 54-1j (a) had been satisfied. The Appellate Court agreed with the defendant, concluding that the trial court had failed to comply substantially with the statute when it neglected to personally address the defendant regarding the potential immigration consequences of his pleas. Id., 494–95. The Appellate Court therefore reversed the judgments of the trial court and its decision denying the defendant's motion to withdraw his guilty pleas; id., 497; the state's certified appeal to this court followed. Additional facts will be set forth as necessary.

The state claims on appeal that the Appellate Court improperly reversed the trial court's denial of the defendant's motion to vacate and withdraw his guilty pleas. The state argues that, pursuant to our rule in *State* v. *Malcolm*, 257 Conn. 653, 778 A.2d 134 (2001), substantial compliance with § 54-1j (a) was sufficient and contends that the trial court in the present case substantially complied with the statute. Specifically, the state contends that, although the Appellate Court cited the proper standard for substantial compliance with § 54-1j (a), it in effect required literal compliance with that statute. The defendant responds that the requirements of § 54-1j (a) were not fulfilled in the present case in any way. We agree with the state, and conclude that the trial court substantially complied with the basic tenets of § 54-1j (a).

Before addressing the merits of the state's claim, we set forth our standard of review. "[A guilty] plea, once accepted, may be withdrawn only with the permission of the court." (Internal quotation marks omitted.) *State*

v. *Stocking*, 131 Conn. App. 81, 86, 26 A.3d 117 (2011). Section 54-1j (c)[4] permits the defendant, not later than three years after the acceptance of his guilty plea, to move to withdraw his plea if he can show that the court failed to comply with the requirements of § 54-1j (a). "The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused." (Citation omitted; internal quotation marks omitted.) *State* v. *Carmelo T.*, 110 Conn. App. 543, 549, 955 A.2d 687, cert. denied, 289 Conn. 950, 960 A.2d 1037 (2008).

We first addressed the issue of substantial compliance with § 54-1j in *State* v. *Malcolm*, supra, 257 Conn. 653. In that case, the trial court failed to mention specifically all three of the immigration and naturalization consequences set forth in § 54-1j (a) during the defendant's plea canvass. We concluded that "it was not necessary for the trial court to read the statute verbatim . . . [and, instead] only substantial compliance with the statute [was] required to validate a defendant's guilty plea." Id., 662. In reaching that conclusion, we took note of the rule under which "substantial compliance is required when warning the defendant of the *direct* consequences of a guilty plea pursuant to Practice Book § 39-19[5] in order to ensure that the plea is

---

[4] See footnote 1 of this opinion.

[5] Practice Book § 39-19 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge . . . and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made . . . ."

voluntary pursuant to Practice Book § 39-20."[6] (Emphasis added.) Id. Therefore, we reasoned that it would be illogical to "require stricter compliance with regard to the *collateral* consequences of a guilty plea." (Emphasis added.) Id., 663.

Notwithstanding our conclusion in *Malcolm*, the defendant in the present case claims that an amendment to § 54-1j (a) subsequent to our decision in *Malcolm* requires us to revisit the substantial compliance standard. Prior to the 2003 amendment; see Public Act 2003, No. 03-81, § 1 (a); the statute provided that "[t]he court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the court *advises him* of the following: 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.' " (Emphasis added.) General Statutes (Rev. to 2003) § 54-1j (a). As a result of the amendment, rather than requiring the court to advise the defendant of the potential immigration consequences of his plea, the statute requires the court to "[address] the defendant personally and [determine] that the defendant fully understands [those potential consequences] . . . ." General Statutes § 54-1j (a). That change, the defendant contends, requires the court in all circumstances "to direct its immigration inquiry to the defendant himself, not his attorney . . . ." Although we do not disagree that § 54-1j, as amended, places an additional burden on the court to ascertain the defendant's understanding

---

[6] Practice Book § 39-20 provides in relevant part: "The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. . . ."

of the potential consequences of his plea, we do not agree that substantial compliance can be established only if the court addresses the defendant personally.

We find that our reasoning in *Malcolm* still applies today despite the 2003 statutory amendment, because the purpose of the statute remains the same—to warn a defendant of possible immigration consequences from a guilty plea.[7] "[Section] 54-1j, rather than demanding that trial courts instruct defendants on the intricacies of immigration law, seeks only to put defendants on notice that their resident status could be implicated by the plea." *State* v. *Malcolm*, supra, 257 Conn. 663–64. Thus, "[a]lthough it would have been better practice for the trial court to have read the statute verbatim, strict compliance was not necessary to put the defendant on notice that a conviction could have implications beyond the state criminal justice system." Id., 664.

Our conclusion is further supported by the fact that § 54-1j was amended in such a way that it now employs the same exact wording as the Practice Book section upon which we relied heavily in *Malcolm*. Practice Book § 39-19[8] provides that the judicial authority, prior to accepting a plea of guilty or nolo contendere, must "first [*address*] the defendant *personally* and [determine] that he or she fully understands [the nature and consequences of the plea] . . . ." (Emphasis added.) It is well established that substantial compliance with Practice Book § 39-19 is sufficient; *State* v. *Malcolm*, supra, 257

---

[7] It bears mention that an alternative characterization of Public Act 03-81, § 1, is that it memorializes the decisions of the Appellate Court in *State* v. *Webb*, 62 Conn. App. 805, 813–14, 772 A.2d 690 (2001), and *State* v. *Irala*, 68 Conn. App. 499, 518–21, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002), that trial courts have no duty to advise defendants on the intricacies of immigration law. Rather, as Public Act 03-81, § 1, clarifies, § 54-1j merely requires trial courts to put defendants on notice that there *could* be immigration consequences of their pleas.

[8] See footnote 5 of this opinion.

Conn. 662; and we see no reason to depart from that reasoning in light of the fact that § 54-1j (a) now has identical terminology. We thus conclude again that, in amending the statute, "[t]he legislature [still] did not intend to create a loophole for defendants to use as grounds for vacating guilty pleas, years after they have been entered, once evidence is destroyed or witnesses become unavailable." Id., 665.

In the present case, the record reveals that the defendant was adequately warned that his immigration status could be implicated by his guilty pleas. In response to the court's inquiry, defense counsel stated on the record that he had informed his client about potential immigration issues and that the defendant understood the possible consequences of his pleas. The trial court properly relied upon these representations by defense counsel. "Absent some indication to the contrary, a court is entitled to rely on counsel's representations on behalf of his or her client." State v. Stewart, 64 Conn. App. 340, 349–50, 780 A.2d 209, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001).

We find these representations by defense counsel particularly pertinent because the statute, on its face, turns on communication between the defendant and his attorney about immigration consequences. Pursuant to § 54-1j (a), if the court finds that the defendant has not discussed the possible immigration consequences with his attorney, the appropriate remedy is for the court to "permit the defendant to do so prior to accepting the defendant's plea." Clearly, then, based on the text of the statute, the legislature was primarily concerned with ensuring that defendants engage in a conversation *with their counsel*, not the court, regarding the immigration consequences of guilty pleas.

We further note that there is nothing in the record to indicate that the defendant, upon hearing these repre-

sentations by his attorney, objected to them, demonstrated surprise, or in any way gave the court reason to doubt their accuracy. See *State* v. *Henry*, 117 Conn. App. 478, 484, 979 A.2d 572, cert. denied, 294 Conn. 910, 982 A.2d 1083 (2009) (denial of defendant's motion to correct illegal sentence when defendant and counsel "did not indicate that [sentence] contradicted their understanding of the terms"); *State* v. *Cazzetta*, 97 Conn. App. 56, 60–61, 903 A.2d 659 (2006) (defendant cannot claim surprise regarding sentence when he had opportunity to indicate sentence was inconsistent but failed to do so). In the absence of any evidence to the contrary, then, we conclude that the defendant had been informed by his attorney of the potential immigration consequences he faced.

Next, we find additional support for our conclusion in facts occurring prior to the date of the defendant's plea canvass. Specifically, at a violation of probation hearing approximately six months prior to the date on which the defendant entered his guilty pleas, the defendant's testimony demonstrated that he understood that he was at risk for deportation.[9] Furthermore, immediately after the defendant's pleas were accepted by the trial court, the prosecutor clearly stated on the record that the defendant was "going to be deported."[10] Again, there is nothing in the record to indicate that the defendant or his counsel expressed surprise, ques-

---

[9] The defendant testified at his violation of probation hearing as follows:

"[Defense Counsel]: And are you deportable?

"[The Defendant]: Yes, sir."

[10] The discussion at the defendant's plea canvass occurred as follows:

"The Court: Is there an immigration sticker on him?

"[Defense Counsel]: There is no immigration sticker as [far as] I know of. But I know that—

"[The Prosecutor]: He's going to be deported. I looked into it when we did the . . . [and] we talked and then when we did the [violation of probation] hearing that's what they told us.

"The Court: All right."

tioned the prosecutor's statement, objected to it, or otherwise expressed any reservation.

"It is often said that common sense does not take flight at the courtroom door." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, 113 Conn. App. 177, 194, 965 A.2d 621, cert. denied, 291 Conn. 916, 970 A.2d 728 (2009). A commonsense analysis of the record in the present case reveals that the defendant had notice of the potential immigration consequences that he faced as a result of his guilty pleas, and the purpose of § 54-1j therefore was effectuated. Accordingly, we conclude that the Appellate Court improperly reversed the trial court's judgments on the basis of its failure to substantially comply with § 54-1j.

We underscore that our conclusion that the trial court substantially complied with § 54-1j in the present case is not intended to suggest that we expect anything less than full and literal compliance with the statute. The statutory requirements of § 54-1j and similar statutes serve an important function in safeguarding fundamental rights, and we expect that trial courts will follow the better practice of complying closely with all applicable requirements concerning plea canvasses.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgments of the trial court.

In this opinion the other justices concurred.