******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* EVANDRO P. LIMA
(SC 19736)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued November 9, 2016—officially released May 16, 2017*

*Vishal K. Garg*, for the appellant (defendant).

*James M. Ralls III*, assistant state's attorney, with whom, on the brief, were *Maureen T. Platt*, state's attorney, and *John J. Davenport*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The defendant, Evandro P. Lima, appeals[1] from the judgment of the trial court, which denied his motion to vacate his guilty plea to one count of conspiracy to commit larceny in the third degree in violation of General Statutes §§ 53a-124 and 53a-48. The defendant claims that the trial court abused its discretion in denying that motion because, under General Statutes § 54-1j (a),[2] the court was required but failed to ask the defendant whether he had spoken with counsel about the possible immigration consequences of pleading guilty before accepting the plea offer. We disagree with the defendant that the trial court improperly failed to inquire of the defendant whether he had consulted with counsel about the possible immigration consequences of his guilty plea because the defendant expressly acknowledged that he understood those consequences, which is all that was required for purposes of § 54-1j (a). We therefore affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The defendant entered a plea of guilty under the *Alford* doctrine[3] to conspiracy to commit larceny in the third degree after he and a friend took an automobile worth approximately $10,000 from a dealership for a test drive and never returned it. During the plea canvass, when the court asked the defendant whether he had discussed with his attorney the case and his decision to plead guilty, he answered in the affirmative. The defendant also responded in the affirmative when the court asked him whether he understood that, if he was not a citizen, his conviction could result in his "removal from the United States, exclusion from readmission or denial of naturalization . . . ." At the conclusion of the plea canvass, the trial court also asked the assistant state's attorney and defense counsel whether there was any reason why the court should not accept the defendant's plea, and both responded that they were not aware of any such reason. Following the plea canvass, the court sentenced the defendant to one year of incarceration.

Thereafter, pursuant to § 54-1j (a) and (c), the defendant filed a motion to vacate his guilty plea, claiming that the trial court improperly failed to determine whether he had spoken to defense counsel about the possible immigration consequences of pleading guilty before the court accepted the defendant's plea. The trial court denied the defendant's motion, concluding that § 54-1j (a) contains no requirement that the court ask the defendant whether he had discussed with counsel the possible immigration consequences of pleading guilty; rather, it requires the court to ask only whether he understood that pleading guilty could have such consequences. Under the trial court's reading of the statute, only if the defendant had answered the court's

question in the negative was it obligated to conduct an additional inquiry.

The defendant claims on appeal that § 54-1j (a) is ambiguous as to whether the trial court was required to make an express inquiry of the defendant to determine whether he had discussed with counsel the possible immigration consequences of pleading guilty. The defendant contends that this ambiguity arises from the fact that, although the statute provides that the trial court must allow a defendant time to discuss with counsel those possible consequences of his plea if he has not already done so, it is silent as to the manner in which the trial court is to determine whether such a discussion had taken place. According to the defendant, two possibilities exist. The first is that, before accepting the defendant's plea, the court must ask the defendant directly whether he has discussed the immigration consequences of the plea with his attorney. The second is that the court may ascertain whether such a discussion had taken place when it asks the defendant whether he understands that his plea could carry with it certain adverse immigration consequences because, if the defendant has not previously discussed that issue with counsel, he will respond to the court's inquiry in the negative. The defendant further maintains that, in light of this ambiguity, this court may consult extratextual evidence of the statute's meaning, such as its legislative history, prior judicial decisions and the laws of other states, which, according to the defendant, support his reading of the statute.[4]

As in all cases of statutory interpretation, we begin our analysis with the pertinent statutory language. Section 54-1j (a) provides that the court shall not accept a guilty plea without first addressing the defendant personally to ensure that he fully understands that, if he is not a United States citizen, his conviction may have certain enumerated immigration consequences under federal law, and, further, if the defendant has not discussed these possible consequences with his attorney, the court shall permit him to do so before accepting his plea offer. Section 54-1j (c) provides that, if the court fails to comply with the requirements of subsection (a), and the defendant can demonstrate that his conviction may have one of the enumerated immigration consequences, the court, upon motion of the defendant within three years of the plea, shall vacate the judgment and permit the defendant to withdraw his guilty plea and enter a plea of not guilty.

Thus, by its terms, "[§] 54-1j (a) permits a court to accept a defendant's plea only if the court conducts a plea canvass during which . . . (1) the court personally addresses the defendant and (2) the court determines that the defendant understands fully the possible immigration consequences that may result from entering a plea." *State* v. *James*, 139 Conn. App. 308, 313,

57 A.3d 366 (2012). The defendant maintains, however, that § 54-1j imposes a third requirement, namely, that the trial court must inquire directly of the defendant as to whether he has discussed with counsel the possible immigration consequences of pleading guilty. In the defendant's view, this requirement inheres in the language directing the court to allow the defendant the opportunity to have such a discussion if he has not already done so.

As the defendant acknowledges, however, the Appellate Court rejected this very argument in *State* v. *James*, supra, 139 Conn. App. 313–14, concluding that § 54-1j (a), by its plain terms, does not require that the trial court determine whether the defendant has discussed with counsel the possible immigration consequences of a guilty plea. Although acknowledging that an attorney has a well established and independent duty to advise a client about those possible consequences of pleading guilty; id., 313 n.1; the Appellate Court rejected the contention that § 54-1j (a) was a source of that duty, stating in relevant part: "We do not read [§ 54-1j (a)] . . . as requiring defense counsel to advise the defendant of the possible immigration consequences of entering a plea[5] or as requiring that the court specifically inquire as to whether defense counsel advised the defendant of the possible immigration consequences of entering a plea. Rather, we read [the] conditional language [at issue] to direct the court, before accepting a plea, to provide the defendant an opportunity to discuss with defense counsel the possible immigration consequences of entering a plea if the court is made aware that the defendant has not [previously] discussed those immigration consequences with defense counsel." (Footnote altered.) Id., 313–14.

We agree with the Appellate Court that § 54-1j (a) does not purport to require the trial court to inquire directly of the defendant as to whether he has spoken with counsel about the possible immigration consequences of pleading guilty before the court accepts the defendant's guilty plea. Well established rules of statutory construction compel this conclusion, chief among them the bedrock principle that the legislature is fully capable of enacting legislation consistent with its intent, particularly in the area of criminal procedure. See, e.g., *State* v. *Fernando A.*, 294 Conn. 1, 101, 981 A.2d 427 (2009) (*Palmer, J.*, dissenting in part) ("[a] review of other criminal procedure statutes demonstrates that, when the legislature has desired to impose specific requirements on the conduct of a pretrial hearing, it has said so explicitly" [internal quotation marks omitted]); *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 771 n.17, 900 A.2d 1 (2006) (legislature knows how to enact legislation consistent with its intent). Thus, we may assume that, if the legislature had intended to require the trial court to determine that the defendant had discussed with counsel the possible

immigration consequences of pleading guilty, it would have indicated such an intent explicitly, in the same manner that it directed the trial court to determine that the defendant fully understood those consequences. "It is not the province of this court, under the guise of statutory interpretation, to legislate such a policy, even if we were to agree with the [defendant] that it is a better policy than the one endorsed by the legislature as reflected in its statutory language." *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 316 Conn. 790, 803–804, 114 A.3d 1181 (2015); see also *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987) ("[i]t is not the function of courts to read into clearly expressed legislation provisions [that] do not find expression in its words" [internal quotation marks omitted]).

Our interpretation finds support in the fact that, under subsection (c) of § 54-1j, a conviction may be vacated only "[i]f the court fail[ed] to address the defendant personally [to] determine that [he] fully understands the possible consequences of [his] plea, as required in subsection (a) of [§ 54-1j] . . . ." Once again, we may presume that, if the legislature had intended to allow a conviction to be set aside for any other reason, it would have indicated such intent explicitly.

In reaching our determination, we are also mindful "that the jurisdiction of the sentencing court terminates once a defendant's sentence has begun and that a court may not take action affecting a defendant's sentence *unless it expressly has been authorized to act.*" (Emphasis added.) *State* v. *Lawrence*, 281 Conn. 147, 154, 913 A.2d 428 (2007). In light of this limitation on the court's jurisdiction, we previously have stated that "[t]he only reasonable interpretation [of § 54-1j (a)] is that a court has jurisdiction [to vacate a conviction] only if the conditions expressly provided [thereunder] are satisfied." *State* v. *Ramos*, 306 Conn. 125, 140, 49 A.3d 197 (2012). As we have explained, § 54-1j (c) authorizes the trial court to vacate a conviction only if the court failed to determine that the defendant understood that pleading guilty may adversely affect his immigration status and, within three years following the acceptance of the plea, the defendant moves to vacate his conviction upon a showing that the conviction may result in one or more of the possible immigration consequences enumerated in § 54-1j (a). Because the trial court's canvass of the defendant in the present case complied with the requirements of § 54-1j (a), the trial court properly denied the defendant's motion to vacate.[6]

The defendant nonetheless argues that this court's decision in *State* v. *Hall*, 303 Conn. 527, 35 A.3d 237 (2012), supports his contention that the trial court was required to ascertain from him whether he had discussed with counsel the possible immigration conse-

quences of pleading guilty. Specifically, the defendant relies on this court's statement in *Hall* that "the statute, on its face, turns on communication between the defendant and his attorney about immigration consequences" and the statement that, "based on the text of the statute, the legislature was primarily concerned with ensuring that defendants engage in a conversation with their counsel, not the court, regarding the immigration consequences of guilty pleas." (Emphasis omitted.) Id., 536. We disagree that the quoted language, when considered in context, supports the defendant's contention.

In *Hall*, the defendant, Osibisa Hall, claimed that, under § 54-1j (c), the trial court's failure to address him personally during the plea canvass—the court had addressed his attorney instead—to determine whether he understood the immigration consequences of his plea required that his conviction be vacated and that he be allowed to withdraw his guilty plea. See id., 530–32. Before accepting Hall's plea, the trial court had asked whether there were any immigration issues to be concerned about, and counsel had responded that there were but that he had discussed them with Hall and that Hall understood them. See id., 530–31. The state also advised the court during the hearing that Hall was to be deported after serving his sentence. See id., 531–32. In light of these facts, this court concluded that the trial court had substantially complied with the basic tenets of § 54-1j (a), which was all that the statute required under *State* v. *Malcolm*, 257 Conn. 653, 778 A.2d 134 (2001). See *State* v. *Hall*, supra, 303 Conn. 533–36; see also *State* v. *Malcolm*, supra, 662 ("only substantial compliance with [§ 54-1j (a)] is required to validate a defendant's guilty plea").

In reaching our determination, we rejected Hall's contention "that [a 2003] amendment to § 54-1j (a) subsequent to our decision in *Malcolm* require[d] us to revisit the substantial compliance standard." *State* v. *Hall*, supra, 303 Conn. 534. In so doing, we explained that, "[p]rior to the 2003 amendment; see Public Act 2003, No. 03-81, § [1 (P.A. 03-81)]; the statute provided that [t]he court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the court advises him of the following: If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States. . . . General Statutes (Rev. to 2003) § 54-1j (a). As a result of the amendment, rather than requiring the court to advise the defendant of the potential immigration consequences of his plea, the statute requires the court to [address] the defendant personally and [to determine] that the defendant fully understands [those potential consequences] . . . ." (Emphasis omitted; internal quotation marks omitted.)

*State* v. *Hall*, supra, 534. Hall, however, argued that the 2003 amendment also "require[d] the court in all circumstances to direct its immigration inquiry to the defendant himself, not his attorney . . . ." (Internal quotation marks omitted.) Id. In addressing this argument, we acknowledged "that § 54-1j, as amended, places an additional burden on the court to ascertain the defendant's understanding of the potential consequences of his plea . . . ." Id., 534–35. We also emphasized that the better practice for trial courts is "full and literal compliance with the statute." Id., 538. We concluded, however, that the purpose of the statute— "to warn a defendant of possible immigration consequences from a guilty plea"—remained the same following the amendment and that, just as before, "rather than demanding that trial courts instruct defendants on the intricacies of immigration law, [the statute] seeks only to put defendants on notice that their resident status could be implicated by the plea." (Internal quotation marks omitted.) Id., 535.

In light of the purpose of § 54-1j, we concluded that the trial court had substantially complied with that statutory provision because the record revealed "that [Hall] was adequately warned that his immigration status could be implicated by his guilty pleas. In response to the court's inquiry, defense counsel stated on the record that he had informed [Hall] about potential immigration issues and that [Hall] understood the possible consequences of his pleas. The trial court properly relied [on] these representations by defense counsel." Id., 536. Such reliance, we observed, was also consistent with the trial court's duty under § 54-1j (a) to allow the defendant time to discuss the immigration consequences of a guilty plea with counsel if the defendant has not already done so. Id. That provision, we noted, reflects that "the legislature was primarily concerned with ensuring that defendants engage in a conversation with their counsel, not the court, regarding the immigration consequences of guilty pleas." Id.

Contrary to the defendant's contention, however, our observation concerning the legislature's understanding of the trial court's role in effectuating the policy reflected in § 54-1j was intended simply to underscore the reasonableness of the trial court's reliance on defense counsel's representations regarding Hall's understanding of the immigration consequences of his plea, because it was the duty of counsel, not the trial court, to apprise Hall of those consequences. Indeed, the right to the effective assistance of counsel guaranteed by the sixth amendment to the United States constitution requires defense counsel to advise a defendant about the possible immigration consequences of pleading guilty whenever that defendant considers entering such a plea. See, e.g., *Padilla* v. *Kentucky*, 559 U.S. 356, 367, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) ("[a]uthorities of every stripe—including the American Bar Associ-

ation, criminal defense and public defender organizations, authoritative treatises, and state and city bar publications—universally require defense attorneys to advise as to the risk of deportation consequences for [noncitizen] clients [during plea negotiations]" [internal quotation marks omitted]); *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 506–507, 142 A.3d 243 (2016) ("the federal constitution's guarantee of effective assistance of counsel requires criminal defense counsel to accurately advise a noncitizen client of the immigration consequences of pleading guilty to a crime, as described in federal law").

We note, moreover, our observation in *Hall*; see *State* v. *Hall*, supra, 303 Conn. 535 n.7; that the 2003 amendment to § 54-1j, which added the language at issue in this appeal, appears to have been enacted in response to two Appellate Court decisions, namely, *State* v. *Webb*, 62 Conn. App. 805, 813–14, 772 A.2d 690 (2001), and *State* v. *Irala*, 68 Conn. App. 499, 518–21, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002), neither of which supports the defendant's interpretation of the statute. As we previously discussed, prior to the 2003 amendment, § 54-1j (a) provided that a "court shall not accept a plea . . . unless the court *advises*" the defendant that if he was not a citizen of this country, his conviction "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States." (Emphasis added; internal quotation marks omitted.) General Statutes (Rev. to 2003) § 54-1j (a).

In *Webb*, the defendant, Delroy Anthony Webb, argued that the term "advises," as used in the preamendment version of the statute, "required the court to actively interact with the defendant and to engage in a colloquy to ensure that he fully underst[ands] the deportation consequences of his guilty plea . . . ." *State* v. *Webb*, supra, 62 Conn. App. 813. Although the Appellate Court rejected this claim, the legislature apparently agreed with it because, shortly thereafter, it amended § 54-1j (a) to require, in language nearly identical to the language the Appellate Court had used to describe Webb's claim, that the trial court actively interact with a defendant during the plea canvass to ensure that the defendant fully understands the possible immigration consequences of pleading guilty. See P.A. 03-81, § 1, codified at General Statutes (Rev. to 2005) § 54-1j (a).

In *State* v. *Irala*, supra, 68 Conn. App. 499, the Appellate Court rejected a claim that the trial court had misled the defendant, Fanny Irala, by informing her, in accordance with the preamendment version of § 54-1j (a), that, if she was not a citizen, her conviction "could" result in her deportation; (emphasis omitted) id., 519; when, in fact, under federal immigration law, her con-

viction was certain to result in her deportation. See id. In rejecting Irala's claim, the Appellate Court, relying on *State* v. *Malcolm*, supra, 257 Conn. 663–64, held that the preamendment version of § 54-1j did not require trial courts to "instruct defendants on the intricacies of immigration law, [but sought] only to put defendants on notice that their resident status could be implicated by the plea. . . . [T]he statute's purpose [was] simply to recognize that this collateral consequence [of a guilty plea] is of such importance that the defendant should be informed of its possibility. . . . *The onus rests . . . with the defendant and her counsel to determine the final result applicable to her situation under federal immigration law before entering a plea.*" (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *State* v. *Irala*, supra, 520. When read in light of *Irala*, the 2003 amendment requiring the court to inform defendants that they have the right to discuss with counsel the immigration consequences of pleading guilty if they have not already done so is properly understood as a codification of the principle, applied in *Irala*, that it is primarily the role of counsel to provide such advice, not the role of the court.[7]

We note, finally, that the scant legislative history surrounding the 2003 amendment does not support the defendant's interpretation of the amendment but, instead, suggests that it was enacted solely to reduce the number of habeas cases in which the petitioners claimed not to have understood the immigration implications of pleading guilty. Such a reduction was to be achieved by requiring defendants, when entering a guilty plea, to state for the record their understanding that it may adversely impact their immigration status. Dana Clark, who testified in support of the proposed legislation on behalf of the Office of the Chief Public Defender, stated in relevant part: "This bill would require the court to ascertain whether a defendant understands the possible immigra[tion] consequences prior to pleading guilty or nolo contendre in a criminal proceeding.

"Currently there is no requirement that the court ascertain whether the defendant understands the immigration ramifications [of pleading guilty]. As it stands now, the court is required . . . only to advise the defendant that if he or she is not a citizen of the United States . . . certain immigration consequences [may ensue].

"Since the court is already required to give this advice, the only substantial change would be that the court asks the defendant a question, which requires an answer, instead of simply making a statement about the consequences.

\* \* \*

"By requiring the court to ascertain affirmatively that

the defendant understands the possible consequences on the record, the defendant would no longer be able to request that the judgment be vacated or the plea withdrawn by way of a writ of habeas corpus on the ground that he or she did not understand the immigration consequences.

"This door would be closed because the defendant's affirmative acknowledgment of his or her understanding of the consequences would be on the record. . . .

"Passage of [the proposed legislation] would result in a decrease in the number of habeas corpus petitions brought before the court that allege that [a] plea was not voluntary. This decrease in the number of petitions filed would provide the Habeas Unit [of] the Office of [the] Chief Public Defender more time to devote to other petitions in the system, which is already so [overburdened]." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 7, 2003 Sess., pp. 2163–64. Thus, contrary to the defendant's assertion, the legislative history is fully consistent with our conclusion that the 2003 amendment was not intended to impose any requirements on the trial court apart from the ones expressly provided therein.[8]

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 54-1j (a) provides: "The court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the court first addresses the defendant personally and determines that the defendant fully understands that if the defendant is not a citizen of the United States, conviction of the offense for which the defendant has been charged may have the consequences of deportation or removal from the United States, exclusion from readmission to the United States or denial of naturalization, pursuant to the laws of the United States. If the defendant has not discussed these possible consequences with the defendant's attorney, the court shall permit the defendant to do so prior to accepting the defendant's plea."

General Statutes § 54-1j (c) provides: "If the court fails to address the defendant personally and determine that the defendant fully understands the possible consequences of the defendant's plea, as required in subsection (a) of this section, and the defendant not later than three years after the acceptance of the plea shows that the defendant's plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty."

Unless otherwise noted, all references to § 54-1j are to the current revision of the statute.

[3] A defendant pleading guilty under the *Alford* doctrine neither admits guilt nor protests innocence, but merely acknowledges that the state can produce evidence that would be sufficient to obtain a conviction. See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[4] "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to [the broader statutory scheme]. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to deter-

mine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . .'' (Internal quotation marks omitted.) *State* v. *Pond*, 315 Conn. 451, 466–67, 108 A.3d 1083 (2015). Furthermore, whether § 54-1j (a) required the trial court to inquire directly of the defendant as to whether he had spoken to counsel about the possible immigration consequences of pleading guilty before the court accepted his plea presents an issue of statutory construction over which our review is plenary.

[5] The court in *James* made clear that it was not suggesting that defense counsel has no duty to advise an accused of the immigration consequences of a guilty plea but, rather, that § 54-1j is not the source of that duty. *State* v. *James*, supra, 139 Conn. App. 313 n.1.

[6] We note, moreover, that, even if we were to agree with the defendant that § 54-1j (a) is susceptible of more than one reasonable interpretation, the principle of legislative acquiescence would counsel against the construction advanced by the defendant. See, e.g., *State* v. *Flemke*, 315 Conn. 500, 512, 108 A.3d 1073 (2015) (''[o]nce an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision'' [internal quotation marks omitted]). *State* v. *James*, supra, 139 Conn. App. 308, which rejected a claim identical to the defendant's; id., 313–14; was decided by the Appellate Court four and one-half years ago, enough time to give rise to an inference that the legislature does not disapprove of the Appellate Court's interpretation of § 54-1j. See, e.g., *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 252, 756 A.2d 1264 (2000) (six year interval without legislative action supported inference of legislative acquiescence).

[7] The defendant also contends that we should construe § 54-1j (a) as directing trial courts to inquire whether a defendant has discussed the possible immigration consequences of pleading guilty with counsel because statutes in several other jurisdictions require that the court allow time for a defendant to have such a discussion only upon the defendant's request. The defendant asserts that the absence of any such '' 'upon request' language . . . from § 54-1j (a) strongly suggests that the onus is on the court, rather than [on] the defendant, to ensure that the defendant has had adequate time to speak with counsel about immigration consequences.'' We will not read into § 54-1j requirements that are not contained therein merely because other states have chosen different language to effectuate the same policy. We note, moreover, that the statutes that the defendant cites are arguably less protective of noncitizen defendants because, unlike § 54-1j (a), they do not require courts to determine that a defendant fully understands that pleading guilty may result in his deportation or inability to later reenter the country; instead, they merely require that the court advise the defendant that such consequences may ensue from the entry of a guilty plea.

[8] Having concluded that, under § 54-1j, the trial court is not required to ask a defendant whether he has consulted with counsel about the possible immigration consequences of his guilty plea when that defendant has informed the court that he understands those possible consequences, we nevertheless believe that it is a good practice to make such an inquiry. Thus, we therefore encourage our trial courts to do so.

---